Delivered January 30, 1891.

---

## W. H. WYATT V. FOSTER & RAFFETY.

### No. 2975.

1.  **Boundary Lines — Surveys Having Calls for Each Other. —** Adjoining surveys made by the same surveyor within a few days of each other, mapped with a common division line and calling for each other, will appropriate the land the one to

the other.   Very clear evidence would have to be adduced in order to justify the conclusion that any vacancy existed between the surveys as actually run.

. **2.   Calls in Survey—Distance.**—Of all the calls in a survey that for distance is of the least dignity, and ordinarily must yield to calls for the corners and lines of surrounding surveys.

**3.   Excess in Quantity, etc.**—See facts where excess in quantity and discrepancies in distances are held to be controlled by calls for lines of adjoining surveys.

**4.   Practice—Intervention.** — Suit upon vendor's lien notes seeking foreclosure. Intervenor claimed part of the land.   *Held*, he can not complain that the notes of the original defendants were read in evidence without proof of execution.   Intervenor occupies position of plaintiff in an action to try title.   The burden of proof is upon him.

APPEAL from Llano.   Tried below before Hon. A. W. Moursund.
The opinion gives a statement of the case.

*Knight Stith,* for appellant Wyatt.— 1.   The west boundary line, a portion of the north, and nearly the entire south boundary line of the M. M. Hill league are entirely suppositious, not actually made or marked on the ground at the time of making the original or first survey, and do not reach the Campbell survey.    The entire north and west and a part of the east lines of the James Campbell survey No. 138 are entirely suppositious and never actually made on the ground at the time of making the first or original survey.

2.    The suppositious line of a survey, part only of which survey was actually made on the ground, will not be extended any great distance over its call; neither will its course be materially changed so as to comply with its call for a purely imaginary or suppositious corner or corners on the open and undefined line of another survey, nor to reach a corner that can only be demonstrated by measurement.    Fagan v. Stoner, 67 Texas, 287; Boon v. Hunter, 62 Texas, 583; Booth v. Strippleman, 26 Texas, 436; McGowan v. Hill, 26 Texas, 359; Bragg v. Lockhart, 11 Texas, 80.

3.    Well defined natural or artificial objects, when called for and described in field notes and found and identified on the ground, will ordinarily control both course and distance, but to have this effect the objects called for and found on the ground must be so well described in the field notes as to enable a surveyor to distinguish them from other objects of a similar nature, and be so well defined and identified on the ground as to give a reasonable certainty that they are the objects either made or adopted by the surveyor who made the survey and called for in his field notes. Robertson v. Mosson, 26 Texas, 248.    When great doubt and uncertainty exist as to the identity of the objects found being those called for in the field notes, and no natural objects are called for along the line, course and distance from well known corners will control.    Fagan v. Stoner, 67 Texas, 287; Ayers v. Lancaster, 64 Texas, 312; Browning v. Atkinson, 37 Texas, 633; Ayers v. Harris, 64 Texas, 296; Chenowith v. Haskell, 3 Pet., 96.

4.    A call for course and distance will prevail over a call for either

natural or artificial objects when upon applying the calls of the grant to the land the surrounding and connecting circumstances adduced in evidence to explain the discrepancy show that course and distance is the most certain and reliable evidence of the true locality of the grant. Robinson v. Doss, 53 Texas, 497; Booth v. Strippleman, 26 Texas, 436; Booth v. Upshur, 26 Texas, 64; Hubert v. Bartlett, 9 Texas, 97; Stafford v. King, 30 Texas, 258; Duren v. Presberry, 25 Texas, 513.

5. ○ A league survey fronting on a navigable stream, and having its river corners well defined by bearing trees not disputed and old marked lines running out from each corner on the course called for, but having no bearing trees or other reliable objects called for at its back corners, will be located by course and distance according to calls in field notes from the extremity of the marked lines, and not by junior surveys located around it. Laws Coahuila and Texas, Pasch. Dig., art. 697; Williamson v. Simpson, 16 Texas, 435; George v. Thomas, 16 Texas, 75; Boon v. Hunter, 62 Texas, 582; Stafford v. King, 30 Texas, 258.

6. The burden of proof is on the party claiming under the uncertain survey. Fagan v. Stoner, 67 Texas, 286; Schaeffer v. Berry, 62 Texas, 705; Ayers v. Lancaster, 64 Texas, 305; Phillips v. Ayres, 45 Texas, 602.

7. The Hill league is well defined by its own field notes and the natural and artificial objects found on the ground in strict conformity therewith, and thus defined it gives to said league its shape, courses, and distances, conformation and quantity of land as called for in patent; and being thus well defined it is sufficient and should not be changed.

As to how a league survey fronting on navigable stream shall be made (Paschal's Digest, article 697), in connection with the fact that the field notes show that this league fronts 2550 varas and runs back for quantity. Williamson v. Simpson, 16 Texas, 435; Stafford v. King, 30 Texas, 257.

As to natural boundary, course, distance, and configuration. Schaeffer v. Berry, 62 Texas, 714.

Where line has been marked part of the way. George v. Thomas, 16 Texas, 75; Boon v. Hunter, 62 Texas, 582.

The lines of survey may be subject to call only. Bolton v. Lann, 16 Texas, 96.

As to back lines where there are side lines. Ayers v. Lancaster, 64 Texas, 305.

A line clearly defined by course and distance only will prevail over an uncertain. Browning v. Atkinson, 37 Texas, ·638.

8. The evidence offered by appellees to prove the southwest corner of Hill league where appellees claim it (625 varas south of field note distance) is totally insufficient. A call for a line of another survey will not extend distance unless the line is marked and was marked at the time of making the survey calling for it. Browning v. Atkinson, 37 Texas, 633; Chenowith v. Haskell, 3 Pet., 96; Fagan v. Stoner, 67 Texas, 286; Booth

v. Upshur, 26 Texas, 64; Bass v. Mitchell, 22 Texas, 285; Bragg v. Lock-
hart, 11 Texas, 160; Castleman v. Pouton, 51 Texas, 84; McCowan v.
Hill, 26 Texas, 359; Lilly v. Blum, 70 Texas, 705; Boon v. Hunter, 62
Texas, 582.

9.   If the evidence in this case should be considered in a measure suffi-
cient within itself to establish the southwest corner of Hill as claimed by
appellees, it is contradicted by the confusion, uncertainty, and direct con-
tradiction that follows as a result of adopting said corner.   Lilly v. Blum,
70 Texas, 705; Booth v. Strippleman, 26 Texas, 436; Boon v. Hunter, 62
Texas, 582; Robinson v. Doss, 53 Texas, 496; Booth v. Upshur, 26 Texas,
64.   The case of Stafford v. King, 30 Texas, though similar is not in
point, because there are no natural objects called for in Hill south line.

*W. T. Dalrymple* and *W. A. H. Miller*, for appellees.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by Foster &
Raffety against Bryant Hayes and B. W. Hayes as makers of certain
promissory notes payable to the plaintiffs, and against Charles Baugh and
W. R. Sharp, Jr., as vendees from Bryant and B. W. Hayes of a tract of
land for the purchase money of which the notes were given.   A lien upon
the land was claimed in the petition and there was a prayer for its en-
forcement.

The plaintiffs originally sold the land to Bryant and B. W. Hayes, who
executed the notes sued upon for part of the purchase money.   After
their purchase they sold the land to their codefendants.

Appellant Wyatt intervened in the suit, claiming to be the owner of a
part of the land and praying a judgment for its recovery.   The plaintiffs
recovered a judgment for the amount of the notes against the makers,
and also obtained a decree enforcing their lien upon the land.   It was also
adjudged that the intervenor should take nothing by reason of his suit.
The intervenor and the defendants Baugh and Sharp appealed from the
judgment; but Sharp and Baugh have failed to file briefs in this court
and their appeal can not be considered.

The plaintiffs, Foster & Raffety, claimed title to the land sold by them
to Bryant and C. W. Hayes, and conveyed by the latter to their codefend-
ants, under a regular chain of conveyances proceeding from the patentee
of the M. M. Hill survey.

To so much of the land conveyed as is embraced within the field notes
of the Hill survey defendants Baugh and Sharp have title, subject to the
plaintiffs' lien for their purchase money.   But the appellant Wyatt claims
that all of the tract sold by the plaintiffs, which consists of 800 or 900
acres, except 200 acres, is not included in that survey.   His counsel in his
behalf states the issue as follows:

"The intervenor, Wyatt, claims title to the western portion of this land

by patent dated June 2, 1886, as assignee of William R. Sharp, Jr., under a location, file, and survey made by him by virtue of said Sharp certificate. The Sharp location and patent is junior to that of the M. M. Hill league.

"The principal question involved in this suit is, What is the true south boundary line of the Hill league? and this depends solely as to where is the true southwest corner of said league.

"The appellees, Foster & Raffety (plaintiffs below), claim that the west boundary line of the Hill league in its call going south extends over its field note distance to an excess of 625 varas, and extends to and reaches the north line of the James Campbell survey No. 138, and then runs eastward with the north lines of Campbell and Shackelford surveys, and thence back in some way to the beginning corner of the Hill on the Colorado River; thus covering up a portion of the land patented to Wyatt and all of the State survey made by virtue of the Sharp certificate.

"The intervenor, Wyatt, claims that said Hill league line on its west boundary running south stops at its field note distance of 2350 varas at a mound, and then runs east on course and distance to its beginning corner on the river, thus leaving the space south of the line as thus run, and between it and Campbell and Shackelford surveys, for the land located by the Sharp certificate. The principal question then is only one of boundary line."

The accompanying plat shows the position of the Hill and the adjoining and neighboring surveys on the south and west. (See next page.)

The Hill was first surveyed October 26, 1839, and then again November 10, 1845. It was upon the field notes of the latter survey that the patent issued. Briefly stated they are as follows: Beginning at the northeast corner of survey No. 1 for E. G. Mercer (describing it); thence up the Colorado River with its meanders (giving them) to a stake (described by bearing trees); thence west 9159 varas to a mound of stone; thence south 2354 varas to a mound on the north boundary line of survey No. 138; thence east 3803 varas with the north boundary line of survey No. 138 to its northeast corner; thence south 225 varas to the northwest corner of survey No. 132; thence east 1901 varas with the north boundary line of said survey to its northeast corner; thence north 49 varas to the northwest corner of survey No. 1, made for E. G. Mercer; thence east 4220 varas with the north boundary line of said survey to the place of beginning; containing five labors of arable and twenty-one labors of pasture land.

No. 138 is the James Campbell survey, and No. 132 is the F. S. Shackelford. The field notes of the Campbell call to begin at the northwest corner of No. 137 (the F. C. Burt), and to run thence north 2895 varas to a mound; thence east 5376 varas to a mound; thence south 994 varas to the northeast corner of No. 134 (the W. J. Shackelford); thence west

3802 varas to the northwest corner of No. 135 (the G. S. Bledsoe); thence south 1901 varas to the southwest corner of No. 135, and thence west to the beginning.

The field notes of the F. S. Shackelford No. 132 call to begin at the northwest corner of No. 133 (the F. P. Shackelford); thence east 1901 varas with the north boundary line of No. 133 to the southwest corner of No. 1 (the E. G. Mercer); thence north 190 varas with the west boundary of No. 1; thence west 1901 varas with the south boundary line of No. 104 (the M. M. Hill), and thence south 1901 varas to the beginning.

The field notes of the Mercer No. 1 call to begin at the northeast corner of survey No. 2 (Levi Mercer); thence to run up the river, meandering it, to a corner marked by bearing trees; thence west 4220 varas to a stake; thence south at 49 varas the northeast corner of No. 132 (F. S. Shackelford) and 1950 varas the southeast corner of No. 132; thence east with the north boundary line of No. 133 (F. P. Shackelford) 787 varas to northeast corner of No. 133; thence south 620 varas a stake, and thence east 2333 to the beginning.

If the Hill survey be controlled by the distance called for from its northwest to its southwest corner, the latter and the southeast corner of the Hardin are at the same point, and the south boundary line of the Hill is where the appellant claims it to be. But if the west line be extended to the north boundary of the Campbell as called for, then there is no vacancy between the Hill on the north and the Campbell and Shackelford surveys on the south, and appellant's patent, being subsequent to these surveys, is void.

To extend the west line of the Hill as appellees claim it should be gives an excess in the survey of several hundred acres; besides in running east from the point 49 varas north of the northeast corner of survey No. 132 the course and distance both have to be changed in order to reach the place of beginning. The northeast corner of the Mercer is well established and there is a marked line running west from that point; but run by course and distance it lacks several hundred varas of reaching surveys 132 and 133 as called for in its field notes, and also lies several hundred varas further north than the calls in the field notes for the latter surveys would indicate. So that if the last call of the Hill, which is to run east from a point 49 varas north of No. 132, be run according to calls it conflicts with the Mercer, and on account of the course of the river the distance is too short. In addition to this the witness found a marked line extending east from the southeast corner of the Hardin, which if extended east according to the courses and distances called for in the Hill would avoid the conflict with the Mercer. The line claimed by the appellees as the north line of the Campbell and the south line of the Hill is not marked. These are the main facts by which appellant's claim is supported.

The transcript does not show when the E. G. Mercer was surveyed, but it does show that the Hill and the other old surveys lying south of it were surveyed about the same time and by the same surveyor.   The F. S. Shackelford No. 132, October 15, 1845; the W. J. Shackelford No. 134, the Bledsoe No. 135, and the Burt No. 137, October 16, 1845; the Campbell No. 138, November 8, 1845, and the Hill No. 104, November 10, 1845.

The southeast and southwest corners of the Campbell, the northwest and northeast of the Burt, the northwest, northeast, and southeast of the F. S. Shackelford, the northwest, northeast, and southeast of the W. J. Shackelford were identified by objects called for in the field notes and found upon the ground.   The north corners of the Campbell were not found except by course and distance.   At the southwest corner of the Hill a mound is called for, and at the point where an extension of its west line intersects the north line of the Campbell a natural mound was found, but there were other like mounds near the spot.   No bearing trees were found and none were called for, though there were trees in that vicinity.   Also a mound was found near the east end of the line called for in the next call; but the surveyors who testified as to these mounds did not attach much importance to the fact, and neither do we.   But on the other hand, since all the surveys which are called for in the field notes of the Hill, and the field notes of which call for the Hill, were made by the surveyor who surveyed the Hill; and since all these surveys were made within a few days of each other—the survey of the Campbell especially having been made on one day and that of the Hill the next—we are of the opinion that very clear evidence would have to be adduced in order to justify the conclusion that any vacancy existed between the surveys as actually run.   It is clear that it was not the intention of the surveyor to leave a vacancy, and the presumption is that the north line of the Campbell is the same as the south line of the Hill; so also with the north line of the Shackelford.

The discrepancy in the field notes of the Hill is capable of correction, first by extending the west line something over 600 varas south and by a corresponding extension of the call north 49 varas from the northeast corner of the Shackelford No. 132 so as to reach the northeast corner of the Mercer or the prolongation of its north line.   This would require a change of other distances but none of the course.   By extending the E. G. Mercer so as to close on the two Shackelford surveys Nos. 132 and 133, and by observing the calls in the Hill for the lines of the Campbell, the Shackelford No. 132, and the E. G. Mercer, no vacant land is left; and it was the evident intention of the surveyor to leave none.

It is true that in order to attain this result a change in the distance called for in several lines of the Mercer and the Hill would be required; but of all the calls in a survey that for distance is of the least dignity and ordinarily must yield to the calls for the corners and lines of surrounding surveys.   Maddox v. Fenner, *ante*, 279.

The case cited was very like the case before us. But the present is a stronger case for the application of the doctrine, from the fact that the Hill not only calls for the Campbell and Shackelford, but the field notes of the latter call for the line of the Hill.

To the fact that on the west line of the Hill, at the distance called for from its northwest corner, a marked corner is found we attach no importance. The Hill field notes call only for a mound as its southwest corner, and the testimony was that the marked corner was established in surveying the Hardin, and that the surveyor who ran the lines of the latter looked for marks of the Hill corner but failed to find any.

We conclude that the court did not err in holding that the Hill survey embraced the land in controversy and in giving judgment against the intervenor.

The intervenor also complains that the court erred in admitting in evidence the notes upon which the suit was brought without proof of their execution. But we are of opinion that this is a question which does not concern him. He occupies the position in the suit of the plaintiff in an action of trespass to try title. The burden was upon him to prove his title, and this he failed to do.

The judgment is affirmed.

*Affirmed.*

Delivered January 30, 1891.