### J. M. LYON v. W. T. WAGGONER.

Decided November 19, 1904.

**1.—Venue—Waiver—Cross Action—Boundary.**

Where plaintiff in an action to recover land and establish a boundary line has selected the forum (county), he can not plead his personal privilege against any course of action growing out of the subject matter of his suit, such as a cross-action for specific performance of a contract to convey the land

in controversy, but has waived such privilege. (Associate Justice Speer, understanding the suit to be purely one of boundary, is of the opinion that such cross-action has no proper place in reply thereto.)

**2.—Homestead—Abandonment.**

Facts held to constitute the abandonment of a homestead through the acquisition of another one.

**3.—Boundary—Construction of Calls.**

Where it is evident that some one of the calls in the field notes of a block of connected surveys must be treated as a mistake, it is proper to so treat the one the regarding of which as a mistake will result in the fewest possible conflicts.

Appeal for the District Court of Baylor. Tried below before Hon. J. M. Morgan.

*D. A. Holman* and *W. A. Jones,* for appellant.—1. The court erred in its findings of fact and law, and utterly misconstrued the true character of plaintiff's suit in this, to wit: "Plaintiff brought his suit to recover the north half of the section in controversy from defendant;" and that "defendant brought his cross-action to recover from plaintiff the same land;" and upon these errors held that the "plaintiff had submitted to the jurisdiction and venue of this court for all purposes connected with the case;" and "plaintiff having selected the forum, can not plead his personal privilege, against any cause of action growing out of the subject matter of his suit, but has waived such privilege," whereas plaintiff's is only a boundary suit, limited on appeal to Court of Civil Appeals, and defendant's cross-action is to recover land, reviewable on appeal even by Supreme Court. Burnett v. Powell, 25 S. W. Rep., 1030; Schley v. Blum, 85 Texas, 553.

2. The court erred in finding as matter of fact and law that "plaintiff can not plead his personal privilege to be sued in the county of his residence for specific performance of the executory contract for the sale of land sued on by defendant after having selected the forum, and brought his suit (as in this case), but plaintiff has waived said privilege." Art. 1198 Rev. Stats. 1895: Cavins v. Hill, 83, Texas, 73; Thompson v. Locke, 66 Texas, 386; Miller v. Rusk, 17 Texas 170; Hearst v. Kuykendall, 16 Texas, 328; Crawford v. Sandridge, 75 Texas, 383; Mixon v. Groves, 59 Texas, 573; Morrison v. Runnells, 12 Texas, 175.

3. What will constitute abandonment is a mixed question of law and fact; of acts and intent. Mere removal from the homestead will not operate, ipso facto, an abandonment of it, so as to subject it to alienation or incumbrance, by the husband, without the consent of the wife. Thomas v. Williams, 50 Texas, 273, and authorities cited. No absence on pleasure or business, temporary in its nature, and not designed as an abandonment, would work a forfeiture of the right. Franklin v. Coffee, 18 Texas, 418. See also, Goughenour v. Cockrell, 20 Texas, 98; Woolfolk v. Ricketts, 41 Texas, 362; Saunders v. Sheehan, 66 Texas, 657; Myers v. Evans, 81 Texas, 320; Foreman v. Moroney, 62 Texas, 727; Sheppard v. Cossedy, 20 Texas, 30.

4. Lines and corners made by the original surveyor, when found and

identified, constitute the true boundary of the survey, and to ignore them is reversible error. Hill v. Smith, 6 Texas Civ. App., 321; Wyatt v. Foster, 79 Texas, 420; Fendley v. Flowers, 23 S. W. Rep., 749; Stafford v. King, 30 Texas, 270. The footsteps of the surveyor upon the ground should be followed by whatsoever rule they may be traced. Williams v. Winslow, 84 Texas, 371; Ayers v. Lancaster, 64 Texas, 312; Fulton v. Frandoliz, 63 Texas, 333; Stafford v. King, 30 Texas, 273.

*Hunter & Stewart, Glasgow & Keenan, Talbert & Berry* and *Chas. E. Coombes,* for appellee.

### ON MOTION FOR REHEARING.

SPEER, ASSOCIATE JUSTICE.—Appellant, as the owner of the north one-half of section 50, block B, of the G. H. & H. R. R. Co. land in Foard County, sued appellee as the owner of the south one-half of said block to establish the boundary between their said tracts. In reply appellee pleaded by way of cross-action an executory contract entered into between himself and appellant, by the terms of which appellant had obligated himself to convey to appellee the said north one-half of section 50, at an agreed price of $2.30 per acre for such number of acres as appellant should secure a patent to. That patent had issued to appellant for said one-half section, covering 14.8 acres; that appellant had refused to perform his said obligation and that appellee had in all respects complied with his' undertaking. Appellee prayed for the specific performance of this executory contract, and for recovery of the land, and to this end made the tenant of appellant a party to the proceeding.

Appellant pleaded in abatement of appellee's reconvention that the suit was improperly brought in Baylor County, and set up his residence to be in Foard County, which plea in abatement was in all respects in due form, and filed in due order. M. E. Lyon, wife of appellant, intervened, setting up homestead rights in the property in controversy, and joined her husband in his plea in abatement as to appellee's cross-action for specific performance. Appellant also replied that executory contract was in fieri; that he had not procured patent nor requested any, except for 320 acres; that this suit was a proceeding to procure the same; that he repudiated the patent procured by appellees without his knowledge or consent, and that the appellee had not paid or offered to pay for more than 14.8 acres of land. A trial before the court resulted in a judgment in favor of appellee for 14.8 acres of land, this being the amount found by the court to be embraced in the north one-half of said survey No. 50.

The following are the findings of fact of the trial court, to wit:

"1. I find that the facts alleged in the plaintiff's plea in abatement to defendant's cross-action, seeking specific performance of the contract set up therein, were proved by the evidence, and at the time plaintiff instituted this suit in Foard County and at the present time he was and is a resident of Wilbarger County. But I further find that plaintiff brought this suit in Foard County against the defendant, Waggoner, and he afterwards agreed in writing to change the venue to this (Baylor)

county. And plaintiff's suit against the defendant is for the recovery of the north half of section 50, block B in Foard County, and that defendant's cross-action is a suit for specific performance of a contract to convey the same tract of land, theretofore entered into between plaintiff and defendant, and the plaintiff having selected the forum can not plead his personal privilege against any cause of action growing out of the subject matter of his suit, but has waived such privilege."

"2. I find against the plea of homestead rights set up by plaintiff and intervener, because I find that they had abandoned the north half of section 50, the land in controversy, and had acquired homestead rights of a 410-acre survey in Wilbarger County, Texas. That the plaintiff, J. M. Lyon, moved on to said tract of land in Wilbarger County, intending to make it his home. That plaintiff, J. M. Lyon, is the husband of intervener and the head of the family, and had in law the right to select the homestead. That intervener moved on said land before J. M. Lyon, and they together have lived upon and occupied it up to the present time, and now assert claim to the same as their residence and domicile. I find that a construction of the contract of plaintiff with the Belcher Land Mortgage Company for the purchase of the said 410-acre tract of land in Wilbarger County is not necessary for the decision of this case, further than to find that homestead rights can be and have been acquired thereupon by plaintiff and intervener. Allen v. Ashbur, 27 Texas Civ. App., 239; and authorities there cited."

"3. I find that the location of the common corner, sections 53, 54, 55 and 56 at a point 2741 varas south of the north boundary line of block A is not certainly identified on the ground as the corner made on the ground by the original surveyor, and that the calls in the field notes which place the southwest corner of 57 and the southwest corner of 58 at the same point is evidently a mistake in the draughtsman or surveyor who wrote the field notes. And to adopt these two calls and give the north tier of sections the large excess contended for by plaintiff, and to place 57 and 58 on the same ground, and to construct the two tiers of sections within the space north and south of 1771 varas would make an unreasonable number of conflicts with calls for other surveys in blocks A and B, the boundaries of which must be located on the ground by calls for course and distance from well established and identified corners and boundaries of surveys in block A. That such construction would be unreasonable, would be in conflict with the manifest intention of the surveyor, and would destroy the configuration of the surveys as called for in the field notes, and would blot out one entire tier of sections in order to give the north tier a large excess in a block of land shown to be short by actual measurement on the ground."

"4. I find the southeast corner of section 1, the southeast corner of section 5, the southeast corner of section 6, the northeast and southeast corners of section 10, the northeast corners of sections 18, 19, 54 and 55, and the southeast corner of section 85, in block A are found and identified on the ground as called for in the field notes. And I further find that all surveys in the tiers of sections west of the southeast corner of section 85 and all surveys south of this corner and west of the east boundary line of the block must be established on the ground by course

and distance from the established corners above mentioned which can be found on the ground; and I further find that all the surveys in block E must be established on the ground by calls for course and distance from the connection called for with block A. I further find block B has its beginning with section No. 1 of said block on section 220 of block A, and that section 2 is constructed on section 1, and section 3 on section 2, and so on up to section 50, the land in controversy, and each section in the block calls for the section on which it is constructed and for no other section in either block, and that the surveys in block A west of the southeast corner of section 85 are all constructed on the same rule, that is, each succeeding section calling for the preceding one on which it is constructed and no other. I further find that by actual measurement on the ground there is a shortage north and south in block A and block B. I find that the only practical and reasonable way to construct the surveys of block B is to disregard the southeast corner of section 55 in block A as claimed by plaintiff at a point 2741 varas south of its northeast corner, and to disregard, as a mistake, the call for the same corner for the southwest corner of 57 and the southwest corner of 58, and to construct the surveys in block B from the other established and identified corners in block A, and by course and distance from the initial corner, and to establish the north boundary line of the block by running a line west from the northeast corners of sections 55, 54, 19 and 18 in block A, and thus placing the short sections in block B in the north tier of sections, and by so doing the north half of section 50, the land in controversy, contains approximately 14.8 acres of land as called for in the patent."

We adopt the first and second findings as above set forth. The writer, however, takes occasion to say that he is inclined to the view that appellant's plea in abatement, irrespective of our views upon the other branch of the case to be hereafter noticed, should be sustained upon the court's findings of fact. He understands the suit to be purely one of boundary— which is in the nature of an action for specific performance of the implied contract between the owners to establish their boundary line. George v. Thomas, 16 Texas, 86. This being true, he is of the opinion that the reconvention has no proper place in reply to such a suit, since the reconvention is based upon another and different contract in no way arising out of, or incident to, the original cause of action.

We also adopt the trial court's findings as to all the established corners mentioned above, and in addition thereto we find that the common corner of sections 58, 59, 86 and 87 is well established and found on the ground, but we do not find the calls to be the same for the southwest corner of 57 and the southwest corner of 58 in block A, as did the trial court. Nor do we agree with the trial court in his conclusions as to the proper method of construction the surveys in these blocks from those established corners.

Upon the original hearing we were of the opinion that the evidence was such as to compel a finding that the common corner of 54, 53, 56 and 55 was identified on the ground at a distance of 2741 varas south

from the northeast corner of 55, but upon a mature reconsideration of the testimony, we have decided that we would not be justified in reversing the trial court's findings with respect to this corner, and it is for this reason that we have granted appellee's motion for rehearing. We are still of the opinion that the method of construction of the surveys adopted by us upon the original hearing is correct. The general arrangement of the surveys in the three contiguous blocks as shown by the map made by the surveyor when the lands were originally surveyed in 1872, indicates clearly the intention upon the part of the surveyor to plat said blocks in a number of contiguous tiers of surveys; said tiers from south to north being 18, and the 8 tiers on the south containing 18 surveys each, while the remaining ten tiers contain 17 surveys each. We think the proper plan to be followed in ascertaining the true location of section 50 is to construct a line from the southeast corner of section 18 in block A, parallel with the north boundary line of blocks A, B and C, as determined from an extension of the line from the northeast corner of 18 through the northeast corner of 19, through the northeast corner of 54 and through the northeast corner of 55, at a distance of 1960 varas from said north boundary line, as indicated in the following sketch of said blocks—1960 varas being shown to be the distance between the northeast and the southeast corners of section 18 in block A.

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 14 | 51 | 50 | 15 | 14 | 199 | 198 | 163 | 162 | 127 | 126 | 91 | 90 | 55 | 54 | 19 | 18 |
| | 13 | 52 | 49 | 16 | 13 | 200 | 197 | 164 | 161 | 128 | 125 | 92 | 89 | 56 | 53 | 20 | 17 |
| | 12 | 53 | 48 | 17 | 12 | 201 | 196 | 165 | 160 | 129 | 124 | 93 | 88 | 57 | 52 | 21 | 16 |
| | 11 | 54 | 47 | 18 | 11 | 202 | 195 | 166 | 159 | 130 | 123 | 94 | 87 | 58 | 51 | 22 | 15 |
| | 10 | 55 | 46 | 19 | 10 | 203 | 194 | 167 | 158 | 131 | 122 | 95 | 86 | 59 | 50 | 23 | 14 |
| | 9 | 56 | 45 | 20 | 9 | 204 | 193 | 168 | 157 | 132 | 121 | 96 | 85 | 60 | 49 | 24 | 13 |
| | 8 | 57 | 44 | 21 | 8 | 205 | 192 | 169 | 156 | 133 | 120 | 97 | 84 | 61 | 48 | 25 | 12 |
| | 7 | 58 | 43 | 22 | 7 | 206 | 191 | 170 | 155 | 134 | 119 | 98 | 83 | 62 | 47 | 26 | 11 |
| | 6 | 59 | 42 | 23 | 6 | 207 | 190 | 171 | 154 | 135 | 118 | 99 | 82 | 63 | 46 | 27 | 10 |
| | 5 | 60 | 41 | 24 | 5 | 208 | 189 | 172 | 153 | 136 | 117 | 100 | 81 | 64 | 45 | 28 | 9 |
| 15 | 4 | 61 | 40 | 25 | 4 | 209 | 188 | 173 | 152 | 137 | 116 | 101 | 80 | 65 | 44 | 29 | 8 |
| 16 | 3 | 62 | 39 | 26 | 3 | 210 | 187 | 174 | 151 | 138 | 115 | 102 | 79 | 66 | 43 | 30 | 7 |
| 17 | 2 | 63 | 38 | 27 | 2 | 211 | 186 | 175 | 150 | 139 | 114 | 103 | 78 | 67 | 42 | 31 | 6 |
| 18 | 1 | 64 | 37 | 28 | 1 | 212 | 185 | 176 | 149 | 140 | 113 | 104 | 77 | 68 | 41 | 32 | 5 |
| 19 | 72 | 65 | 36 | 29 | 220 | 213 | 184 | 177 | 148 | 141 | 112 | 105 | 76 | 69 | 40 | 33 | 4 |
| 20 | 71 | 66 | 35 | 30 | 219 | 214 | 183 | 178 | 147 | 142 | 111 | 106 | 75 | 70 | 39 | 34 | 3 |
| 21 | 70 | 67 | 34 | 31 | 218 | 215 | 182 | 179 | 146 | 143 | 110 | 107 | 74 | 71 | 38 | 35 | 2 |
| 22 | 69 | 68 | 33 | 32 | 217 | 216 | 181 | 180 | 145 | 144 | 109 | 108 | 73 | 72 | 37 | 36 | 1 |

The boundary line between appellant and appellee would then be a line across section 30 parallel to the line thus constructed and 950

varas distant therefrom, and judgment will be here rendered establishing such line as the boundary line between the parties. This process of construction, if carried throughout the blocks, has the merit of regard for the original configuration of the surveys as shown by the map of the surveyor, and is the only method, to our minds, by which the symmetry of the surveys will be preserved. We think, for this reason, if no other, that this method of construction should be adopted rather than that of observance for course and distance adopted by the court, resulting, as it did, in the destruction of the original configuration of the surveys. The blocks as restored by this process of construction will present an arrangement of surveys as nearly identical with that shown by the original map as is possible, and will, we believe, result in fewer conflicts, and will more nearly approximate the real intention of the surveyor than will any other method which has been suggested, or has occurred to us. It will be observed from the accompanying plat that the tier of sections in which is section 57 is placed north of the corner identified by the witnesses as the southeast corner of section 56 and the northeast corner of section 57. While the field notes of these two sections, viz., 56 and 57, call for a well marked corner which, according to the testimony of the surveyors, is found on the ground, no finding with respect thereto is made by the trial court, and we have treated this call as a mistake and intended, not for the southeast corner of 56, but rather for the southeast corner of section 57. It is evident that some of the calls must be treated as mistakes, and we have concluded that to so treat this one will result in the fewest possible conflicts. The strangeness of this mistake in the draughtsman or surveyor preparing the field notes disappears when it is remembered that he made a similar mistake in describing the well marked northwest corner of 59 as the northwest corner of 58 as well. This is doubtless the mistake of conflict meant by the trial court in his findings with reference to sections 57 and 58. Treating, then, the south boundary line of section 55 as being determined by the line previously constructed west from the southeast corner of section 18, and the call for the marked southeast corner of 56 as a mistake, we have no difficulty in constructing the proper number of tiers of approximately the proper size between section 59, which is well located on the ground, and the north boundary of the blocks.

The appellee's motion for a rehearing is therefore granted, but the judgment of the trial court is reversed and here rendered establishing the boundary line as above indicated, and decreeing in favor of appellee a specific performance of the executory contract to convey to him the north half of said section No. 50, devesting the title thereto out of appellant and vesting the same in appellee, upon his paying to appellant the sum of $2.50 per acre, according to the terms of such executory contract, and awarding to appellant his execution against appellee for said sum.

Motion granted.    Judgment reversed and rendered.

*Reversed and rendered.*

Writ of error refused.