MILLER v. MEYER. (No. 7088.)

(Court of Civil Appeals of Texas. Galveston. Nov. 20, 1916. Rehearing Denied Dec. 7, 1916.)

1. BOUNDARIES ☞37(3) — LOCATION — SIDE LINE—SUFFICIENCY OF EVIDENCE.

In an action to recover a strip of unlocated and unappropriated public lands lying between the west boundary of a survey and the east boundary of another survey where the maps or plats had made the west boundary of the first survey the east boundary of the second, evidence held to sustain a verdict for defendant.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 186–191; Dec. Dig. ☞37(3).]

2. BOUNDARIES ☞37(3)—SURVEY—RESURVEY.

An original survey agreeing with maps in use for many years should not be held erroneous because not agreeing with resurveys made long afterwards and based upon the assumption that information furnished by living persons as to locality of the lines and corners was absolutely correct, nor where they are based upon an indefinite and uncertain starting point.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 186–191; Dec. Dig. ☞37(3).]

3. BOUNDARIES ☞3(6) — CALLS — SURVEYED LINES.

The real object in applying the various calls is to find the footsteps of the surveyor, and, when found and identified, all classes of calls must yield to them.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 24–29; Dec. Dig. ☞3(6).]

4. BOUNDARIES ☞11, 37(3)—ADJOINING SURVEYS—UNAPPROPRIATED STRIP.

Adjoining surveys made by the same surveyor within a few days of each other, mapped with a common division line and calling for each other, will appropriate the land the one to the other, and very clear evidence must be adduced to justify the conclusion of the existence of any vacancy between such surveys as actually made.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 92–94, 186–191; Dec. Dig. ☞ 11, 37(3).]

5. ADVERSE POSSESSION ☞110(4)—PLEADING —EVIDENCE.

In an action to recover land alleged to lie between two surveys owned by defendant, with a cross-bill by defendant to recover such strip, and a plea of title by limitation to the land sued for to protect his chain of title against any defects so that plaintiff might not show an outstanding title in some one else, evidence as to the long possession and use of the land sued for by defendant was admissible.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 644, 645; Dec. Dig. ☞ 110(4).]

Appeal from District Court, Harris County; John A. Read, Judge.

Action by A. R. Miller against Joseph F. Meyer, with cross-action and plea in reconvention. Judgment for defendant on his cross-action, and plaintiff appeals. Affirmed.

Gill, Jones & Tyler and B. F. Louis, all of Houston, for appellant. Baker, Botts, Parker & Garwood, D. F. Rowe and Leonard Doughty, all of Houston, for appellee.

LANE, J. On the 10th day of October, 1916, we handed down an oral opinion in

this case. Appellant has filed his motion for a written opinion, and in compliance with such request we present the following:

For the purpose of clearly presenting the contentions of the parties, we make the following statement:

On the 29th day of September, 1838, Surveyor H. Trott surveyed and located a tract of land known as the Owen's survey in Harris county. He began this survey at its northeast corner; and from thence he ran south 2,888 varas for its southeast corner; thence west 2,888 varas for its southwest corner; thence north 2,888 varas for its northwest corner; thence east 2,888 varas to the place of beginning.

On the 9th day of October, 1838, the same surveyor surveyed and located what is known as the W. N. Bronaugh survey in said county. His field notes by which this survey was located call to begin at a stake near the head of the south fork of Bray's bayou for its southwest corner; thence east 3,818 varas to a stake for its southeast corner; thence north 2,200 varas to a stake for its northeast corner, the same being the Owen's southeast corner; thence west 3,818 varas to a stake and mound in prairie (with said Owen's line crossing said bayou at 940 varas, passing his and Hooker's corner at 2,888 varas and with Hooker's line 828 varas to Aiken's southeast corner and Hooker's southwest corner); thence south 2,200 varas to beginning—thus locating the Bronaugh survey south of the Owen and Hooker surveys, and making the combined south lines of the Owen and Hooker the north line of the Bronaugh, and making the southwest corner of the Hooker the southeast corner of the Aiken, hereinafter described, and the northwest corner of said Bronaugh a common corner for all three of said surveys. The Hooker survey referred to is the same as the Brown shown on the maps introduced in evidence.

The records from the General Land Office, introduced in evidence by defendant in this suit, show that on the 10th day of October, 1838, H. Trott, the same surveyor who surveyed and located the two surveys, Owen and Bronaugh, on the 29th of September and October 9, 1838, respectively, surveyed and located what is known as the Aiken survey. His calls for the boundaries of said survey are substantially as follows: Beginning at a stake in prairie the southeast corner of Black's survey; thence north 1,900 varas for the northwest corner of this (Aiken) survey; thence east one mile to stake for northeast corner; thence south one mile to a stake for southeast corner; thence west one mile to beginning.

The records from the General Land Office showing the survey and location of the Hooker shows that Surveyor H. Trott, in seven or eight months after he had surveyed and located the Owen, Bronaugh, and Aiken surveys, to wit, in June 1839, again went to the same locality and surveyed and located the Hooker survey, making its south, west, and east boundary lines, respectively, to run as follows: Beginning at Owen's southwest corner on the Bronaugh's north line; thence west with said line 928 varas to the southeast corner of the Aiken; thence north with the east line of the Aiken; and then, after reaching the west line of the Owen, he ran with said Owen's west line south to place of beginning. Thus locating the Hooker or Brown north of the Bronaugh and appropriating all the land lying between the Owen and Aiken, 928 varas in width.

In April, 1840, Surveyor Henderson surveyed and located the Simmons, now shown on the official map as the Ely, and in his field notes, by which the same was located, he makes the south line of the Aiken the north line of the Simmons, and the southeast corner of the Aiken the northeast corner of said Simmons. He then calls to run south 1,344 varas with the west line of the Bronaugh; thence west 1,344 varas, etc. Thus making the west line of the Bronaugh and the east line of the Simmons a common boundary between the two surveys.

The probative force of the undisputed facts as above stated is that the records of the surveys mentioned, in use in the General Land Office, show that Surveyor H. Trott surveyed and located the Owen survey on September 29, 1839; that ten days later he surveyed and located the Bronaugh survey south of the Owen, and made the south line of the Owen and south line of the Hooker (surveyed later) the north line of the Bronaugh; and that in running this north line of the Bronaugh he began at the southeast corner of the Owen and ran with the south lines of the Owen and Hooker surveys west 3,818 varas to the Aiken southeast corner, passing the southwest corner of the Owen 828 (928) varas east of the southeast corner of the Aiken; that on the day after locating the Bronaugh he surveyed and located the Aiken, with its east boundary line 928 varas west of the Owen west line; that within seven or eight months thereafter the same surveyor returned to the field of operations and located the Hooker between the west line of the Owen and east line of the Aiken and making its south line rest on and run with the north line of the Bronaugh 928 varas to the southeast corner of the Aiken, thus appropriating all the unlocated land lying north of the Bronaugh, and between the Owen on the east, and Aiken on the west; that Surveyor Henderson in April, 1840, located the Simmons, and in doing so made the west boundary line of the Bronaugh the east boundary line of the Simmons, and called for the southeast corner of the Aiken as the northeast corner of the Simmons.

The maps or plats of the Owen, Bronaugh, Aiken, Hooker, and Simmons surveys in general use in the General Land Office from

1861 to 1869, introduced in evidence, show the relation of these surveys, one to the other, as they are located by the field notes of the locating surveyor, as hereinbefore stated. The title to all the land actually embraced within the boundaries of the Bronaugh and Simmons surveys has passed by mesne conveyances from the sovereignty of the soil to defendant Meyer.

On November 21, 1896, a map or plat was prepared and filed in the General Land Office which, if true, shows that there was a narrow strip of unlocated and unappropriated public land lying between the west boundaries of the Bronaugh and Hooker, and the east boundaries of the Aiken and Simmons, thus pulling apart these surveys and destroying the common boundaries between them which, are shown to exist by all the field notes and maps with reference to said surveys in the General Land Office from 1861 to 1896, by locating the west lines of the Bronaugh and Hooker several hundred varas east of the conceded east line of the Simmons and Aiken, and thereby encroaching on the territory formerly shown to be embraced within the boundaries of the Bronaugh and Hooker.

In July, 1908, plaintiff A. R. Miller made application for a survey of said unappropriated strip as shown by the map of date November 21, 1896. Upon such application, said apparent unappropriated strip was surveyed, and thereafter, on the 4th day of February, 1909, was awarded to said Miller upon his application to purchase.

From the foregoing statement, it clearly appears that appellant's contention is that the west line of the Bronaugh is not the same as the east line of the Simmons, but in fact is several hundred varas to the east thereof, and that there is unappropriated public land lying between the true west line of the Bronaugh, which he contends is shown by the map of 1896, and the conceded east line of the Simmons, and that the award of the same to him in 1909 passed the title thereto to him.

A. R. Miller instituted this suit against Joseph F. Meyer to recover the title and possession of about 128 acres of land which he contends was public school land in 1909 lying between the east line of the Simmons (now Ely) survey and the west line of the Bronaugh survey in Harris county, which he alleges was awarded to him by the state of Texas in 1909. Joseph F. Meyer answered and denied that there was any such vacant land as claimed by Miller and pleaded not guilty, and further by cross-action and plea in reconvention pleaded that he was the owner of all the land embraced within the boundaries of the Bronaugh and Simmons (Ely) surveys, and prayed for judgment over against Miller for the title to said land. He also pleaded the statute of limitation of three, five, and ten years. The cause was tried before a jury, who were instructed by the trial judge, in substance, that the controlling question in the case was as to the true location of the west boundary line of the Bronaugh survey; and that the burden of proof was upon the plaintiff Miller to establish by a preponderance of the evidence that the east boundary of the Ely (Simmons) and the west boundary of the Bronaugh surveys were originally so located as that there was left between them a vacancy as contended by Miller; that in determining such question, they should, if possible, follow the footsteps of the original surveyor as they were actually made on the ground when he located the surveys. Other instructions applicable to the facts and law of the case were given. The court then propounded to the jury six questions, among which was question No. 1, as follows:

"As surveyed by the original surveyors, do, or do not, the Bronaugh and Ely surveys join each other along the extent of the east boundary lines of the Ely survey? You will answer this question by saying, 'They do,' or, 'They do not,' as you may find the fact to be. If in answer to the preceding question you say that the Bronaugh and Ely surveys do so join each other, then you need inquire no further, but return your answer as your verdict. If you do not so find, you will answer the following questions."

The jury answered this question, "They do," and made no further answers to the remaining questions. Upon this answer of the jury the court rendered judgment for the defendant Meyer for the land sued for in his cross-bill, which included the land sued for by Miller.

[1] The main contention of appellant for the reversal of the judgment rendered in favor of appellee is that while the surveyor H. Trott, who surveyed and located the Bronaugh survey, in his locative field notes, in running the north line of the Bronaugh, called to run west 3,818 varas to the southeast corner of the Aiken survey, the distance called for did not in fact reach the southeast corner of the Aiken, but fell short thereof the width of the land claimed by him; that the Aiken southeast corner was marked by no object and could not be definitely identified and located, and therefore the call for such corner did not carry the surveyor to the same, and that under such circumstances the distance called for should control rather than the call for such corner. In other words, it is insisted that the great weight and preponderance of the evidence is so overwhelmingly against the answer of the jury to question No. 1 submitted to them by the court, that their finding should be set aside on appeal, and that the judgment rendered in the lower court should be reversed and the cause remanded for another trial.

We have already seen that the records and maps relative to the location and boundaries of the Bronaugh, and other surveys with which it in some manner connects, make a prima facie case for appellee Meyer. We have carefully examined all the evidence relied upon by appellant for a judgment in his

favor, together with all the facts and circumstances proven, and have reached the conclusion that as a whole the evidence falls very far short of being such conclusive evidence as would or should require from the jury a verdict favorable to appellant.

On page 4 of appellant's brief it is said:

"The testimony showed that the H. Aiken survey was fixed without contradiction to the extent of its east line, so far as its location to the east from the post oak upon the Thomas Dickson survey is concerned, and that the testimony without contradiction, therefore, locates the east line of the Ely (Simmons) survey as at a point no further east than the east line of the·Aiken."

It follows then that the southeast corner of the Aiken is fixed and established by the uncontradicted testimony.

[2] The uncontradicted evidence shows that H. Trott surveyed and located the Bronaugh, Aiken, Owen, and Hooker (or Brown) surveys practically at the same time, and by his calls makes the southeast corner of the Aiken, also the northwest corner of the Bronaugh, and the southwest corner of the Hooker (or Brown) surveys. We think the fact that the same surveyor called for this one point as the common corner for all of these surveys, made practically at the same time, was sufficient evidence to support the finding of the jury. It is inconceivable that the surveyor who made these surveys could have been mistaken as to the location of this point at the time he called for it as the northwest. corner of the Bronaugh, and it follows from what has been said that, if the Bronaugh northwest corner is at the same point as the southeast corner of the Aiken and the northeast corner of the Simmons (or Ely), the west line of the Bronaugh and the east line of the Simmons (or Ely) is a common division line of both surveys, and therefore there is no vacancy between the two surveys as contended by appellant. We attribute but little importance to the fact that the field notes by which the Aiken was located show that the Aiken southeast corner was established one day later than the line of the Bronaugh, which calls to ·run to such corner, for evidently both surveys were made by the same surveyor practically at the same time. Nor do we give any weight to the testimony of the witness Rosenberg as to pencil marks on the original field notes of the Bronaugh survey, made by the surveyor who located said survey. Such testimony does not raise the issue as to whether certain words were erased from said field notes before the issuance of the patent. Where an original survey agrees with maps that have been in use for many years, as in the instant case, it should not be held erroneous because it does not agree with resurveys made long afterwards, and based upon the assumption that information furnished· by living persons as to the locality of the lines and corners is absolutely correct, nor where they are based upon an indefinite and uncertain starting point. McCombs v. Sheldon, 26 S. W. 1114; Lyon v. Waggoner, 37 Tex. Civ. App. 205, 83 S. W. 46.

[3, 4] The real object in applying the various calls is to find the footsteps of the surveyor. When these are found and identified, all classes of calls must yield to them. Fulton·v. Frandolig, 63 Tex. 330; Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031; Ruling Case Law, vol. 4, § 56, p. 117. "Adjoining surveys made by the same surveyor within a few days of each other, mapped with a common division line and calling for each other, will appropriate the land the one to the other. Very clear evidence would have to be adduced to justify the conclusion that any vacancy existed between such surveys as actually made." Wyatt v. Foster, 79 Tex. 413, 15 S. W. 679; Stanus v. Smith, 8 Tex. Civ. App. 685, 30 S. W. 262; Booker v. Hart, 77 Tex. 146, 12 S. W. 16.

We think the finding of the jury that the line between the Bronaugh and Simmons (or Ely) surveys was a common division line, and that there was no vacancy between them, is amply supported by the evidence and is decisive of the issues in this case.

[5] We do not think the court erred in permitting witnesses to testify as to the long possession and use of the land embraced within the boundaries of the Bronaugh and Ely surveys, sued for in defendant's cross-bill. He pleaded title by limitation to the land sued for in his cross-bill as a means, and out of precaution, to protect his chain of title against any defects, to the end that appellant might not show an outstanding title in some one else. We think the evidence admissible for the purpose for which it was offered.

We have examined and considered all of appellant's assignments and overrule them.

We find no error in the trial which resulted in the rendition of the judgment in favor of appellee. The judgment of the trial court is affirmed.

Affirmed.