**TOWN OF REFUGIO et al. v. STRAUCH et al.**

No. 1216—5578.

Commission of Appeals of Texas, Section B.
June 25, 1930.

Jas. E. Ferguson, of Austin, and Luther Nickels, of Dallas, for plaintiffs in error.

Boyle, Wheeler, Gresham & Terrell and R. J. Boyle, all of San Antonio, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for defendants in error.

SHORT, P. J.

The plaintiffs in error in this case, are the city of Refugio, a municipal corporation, the Refugio Development Company, a private corporation, and T. P. Morgan, an individual; the city claiming to be the owner of the fee to the land in controversy and the others claiming under an oil lease executed by said municipal corporation. The defendants in error are the owners of certain farm lots, adjoining on each side of the land in controversy, purchased from the corporation and claiming title to the land in controversy by reason of the fact that said lands in controversy lying between said farm lots are streets of the town of Refugio, and that the purchasers of said farm lots acquired the fee to the middle of the street on each side thereof.

On April 20, 1929, the defendants in error brought this suit in the district court of Refugio county against the plaintiffs in error, praying for final relief, a judgment for the title and possession of a strip of land 30 varas wide and 980 varas long, platted on the map of said town as lying between "farm lots 7 and 12" on the north, and "farm lots 6 and 13" on the south, designated on the said map as a "street," and asking for the issuance of a temporary writ of injunction on the ground that the plaintiffs in error were obstructing said street by drilling an oil well therein. Upon a hearing, after the parties had filed their pleadings, the district judge made an order temporarily restraining the plaintiffs in error from continuing their operations. From this order the plaintiffs in error prosecuted an appeal to the Court of Civil Appeals at San Antonio, where the temporary restraining order by that court was continued in operation. 20 S.W.(2d) 326.

The validity of the title to the four farm lots, each containing 40 acres, by virtue of which the defendants in error claimed the right to the judgment sought, is not questioned. However, the plaintiffs in error claim that the land in controversy is no part of either of said lots. If this claim of the plaintiffs in error is a valid one, then, in so far as the injunction proceedings are affected, under the facts of this case, it must be conceded that the title to the fee to the land in controversy is in the town of Refugio, notwithstanding there is a claim of title in the original petition, by virtue of the statute of limitation of ten years. Still the defendants in error assert that, even though this be true, the land in controversy is a public street of said town, that the public has such an interest therein, including themselves, as to entitle the defendants in error, as a part of the public, to an injunction restraining the plaintiffs in error from obstructing said street. While the pleadings of the parties are quite voluminous, the conclusion we have reached does not demand an extended statement with reference thereto, in view of the fact that the case has not been finally tried, and the only question presented by this record is the validity of the temporary order, by virtue of which the writ of injunction was issued. It is necessary, however, to state that the petition does not contain any allegation that the plaintiffs in error are insolvent, in view of article 4644, R. S. 1925, the provisions of which we shall discuss later. It is also necessary to state that the petition of the defendants in error claims the land by record title and also under the statute of limitation of ten years.

The land in controversy, as well as the four farm lots adjoining it, each containing 40 acres, are a part of a 4-league grant made to the municipality of Refugio some time previous to the year 1834, during which year this town tract, containing 4 leagues, was surveyed in a square form, making the public square of the town the center, the outer boundaries of which were duly designated, and lots in the town proper were surveyed. The ayuntamiento of Refugio, as the colonial town, was established in the summer of 1834 and continued organized until it was broken up by the Revolution of 1836, but it was afterwards re-established, and has remained in existence up to the present time. However, the grant was afterwards recognized by the Republic of Texas and thereafter by the state. Town of Refugio v. Byrn, 25 Tex. 193.

In January, 1876, the town council of Refugio subdivided the outside boundaries of the town tract into tracts of 160 acres each, and each of these 160-acre tracts was divided into 40-acre tracts, called farm lots, of which lots 6, 7, 12, and 13 abut upon the tract of land in controversy, and are owned by the defendants in error by purchase from the town, the deeds to which called, respectively, for the lines of the tract in controversy, which is designated as a "street"; two of the farm lots being on the north and two on the south. The tract in controversy, as well as similar tacts separating these farm lots, by various ordinances and resolutions of the town council of the town of Refugio, at various dates, have been referred to, claimed, and recognized to be "streets" by said town council.

There is a gas well producing gas in paying quantities on lot 13, constructed under an oil and gas lease executed by the owner thereof to a lessee on the 17th of January, 1928. On the 28th of November, 1928, the mayor of the town of Refugio executed to T. P. Morgan an oil and gas lease on various "streets" of the town of Refugio, including the "street" in controversy, in which the land leased is designated as a street. On the 16th day of May, 1929, the defendant Refugio Development Company, the assignee of Morgan, began the actual drilling of a well on the land in controversy. Since the year 1886 the four farm lots, as well as the land in controversy, have been actually inclosed by a wire fence, which has been maintained by the owners of these farm lots. The Refugio Development Company was placed in actual possession of the land in controversy, by the authorities of the town of Refugio, and it has built a derrick, two large boilers, and some pumps, and constructed a slush pit, and connected these by ditches with the well situated on the land in controversy, the practical effect of which is to obstruct the use of this land as a "street." The trial judge in his findings of

fact did not affirmatively hold that the owners of the four 40-acre farm lots had acquired title to the land in controversy under the statute of limitation, but did inferentially hold against such claim in view of the findings of fact under article 5517, R. S. 1925. The fact is also disclosed that the land in controversy is some two miles distant from the inhabited portion of the town of Refugio, the intervening territory being unoccupied by any portion of the town as an aggregation of individuals, and also that the land in controversy is not at the present time necessarily to be used as a street of the town by the public.

It is thus shown, by the facts in this case, that the town of Refugio has not parted with the fee to the land in controversy, unless it did so by reason of having conveyed to the owners of the four farm lots adjoining the land in controversy.

■ A street is a public thoroughfare or highway in a city or village. It is a generic term, and includes all *urban* ways which can be and *are* generally used for ordinary purposes of travel. Elliott, Roads and Streets, p. 12. It is a public thoroughfare or highway established for the accommodation of the public generally in passing from place to place, and for such other incidental uses as are ordinarily made of public streets, such as laying drains, sewers, gas and water pipes and the like. Black's Law Dictionary, title, "Street"; Bouvier's Law Dictionary, title, "Street." It is a public highway of a city or village over which all of the citizens of the country have a right to pass and repass at pleasure. The primary and fundamental purpose of a street is to accommodate the *traveling public* and to afford citizens and strangers an opportunity to pass and repass on foot or in vehicles with such movable property as they may have occasion to transport; and every one has the right to the use thereof under proper rules and regulations, as prescribed by the city or village authorities. The term "street," used *upon a map of a town or city*, imports a public way for the free passage of its trade and commerce. It is of that character that, if a person willfully obstructs it, he can be prosecuted under the penal laws and be made responsible for the expenses of removing the obstruction. Where a city ordinance or a contract made between private individuals speaks of a street, and does so with reference to a town or city, and there are no limiting or explanatory words, it must be taken to mean a street in the true sense of the term. Elliott, Roads and Streets, vol. 1, par. 22. Where a town council or the contract of private individuals speaks of a street and does so with reference to a town or city, without limiting or explanatory words, it is not reasonable to conclude that the language indicates a condition of affairs shown by the

record in this case, where there is no town or village within two miles of the land, and where there is no public in existence to make use of the land as a public thoroughfare or highway.

The rights of the city of Refugio, as a landowner, under the facts of this case, are actually the same as the rights of a private individual occupying the same relation to the land in controversy, as occupied by the town of Refugio, with the exception that the town of Refugio is charged with the public duty to so handle the land in controversy as that it can at any and all times remain in a position to discharge its duties to the public by using the land in controversy for the benefit of the public when the necessity to do so shall have arisen. However, in this case no such necessity appears to be likely to arise within any reasonable period of time in the future.

The freeholder owners of land in Texas have the absolute property right therein without being subject to any rent. The titles to lands in Texas have emanated either from the King of Spain, or under the laws of the Republic of Mexico, or the laws of the Republic of Texas, or those of the state, in each of which case the absolute right is passed from the sovereign to the citizen, whether natural or artificial. In other words, the tenure by which lands are held in Texas is allodial and not feudal.

Article 10, R. S. 1925, in defining the rule of construction of all civil statutory enactments, declares: "The ordinary signification shall be applied to words." Governed by this rule of construction, the meaning of the term "street," in a plat or map or in a town ordinance, or a deed, must be taken as referring to a street in the true sense of the term, which is a public thoroughfare or highway in a city or village.

It is provided by article 1267, R. S. 1925, that cities and towns owning oil or mineral lands shall have the power to lease them for the benefit of such town or city. However, the same article also provides that such town or city "shall not lease for such purposes any street or alley or public square *in said town or city*."

The Court of Civil Appeals, in construing the provisions of this article, held that the plaintiffs in error had violated this law. We think the construction placed upon the law by the Court of Civil Appeals is incorrect. There can be no question, under the facts of this case, that the town of Refugio owns oil and mineral lands and that it has the right to lease them for the benefit of the town and city. This they have done, and in doing so they have not embraced any lands having the character of a public thoroughfare or highway in a city or village. The mere fact that at some future time conditions may change to

such an extent that it will be the duty of the town of Refugio to keep unobstructed for the use of the public this particular tract of land is not a controlling one in this case. Courts do not decide cases on what may happen in the future, but upon the present conditions, as demonstrated by the facts in a particular case. Here we have a tract of land two miles from the town. There is no necessity, at the present time, that it be used as a public thoroughfare or highway in the city or village. It is not even claimed that there is any prospect in the near future that such a condition will arise as would compell this particular tract of land to be kept in such a condition as that the public could use it unobstructed by the presence of an oil well. A proper construction of article 1267, as shown by the last part thereof, clearly indicates that the Legislature intended to use the word "street" in the sense of a public thoroughfare of a city or village. Thus said article closes with this language, "and no well shall be drilled within the thickly settled portion of any city or town, nor within two hundred feet of any private residence," showing that it was the purpose of the Legislature to prevent a city or town, owning oil and mineral lands, to lease them for such purposes so long and whenever the operation of an oil or gas well would inconvenience inhabitants of a city or village, or the inhabitants of a private residence. The record in this case shows there are no such inhabitants. Upon the contrary, the record shows that the owners of the four farm lots have excluded the public from the use of this land for more than 40 years, during which time no member of the public has seen fit to complain, from which it is presumed that there is no such public in existence to be inconvenienced.

In Robins v. McGehee, 127 Ga. 431, 56 S. E. 461, it is stated that "a street is a road or public way in a city, town, or village, laid out and opened for travel by the public," and it is further stated in said case that it is not a street until the same is not only surveyed, but also laid out and opened and put in condition for *public traveling.* It is true that there might be such condition as that streets and avenues could exist in the country, but no such condition is presented by the facts in this case, but, on the contrary, it is clearly shown that there was no occasion for this particular land to be put in condition for public travel and no likelihood that such condition will arise in the near future or during the life of any oil well which might be projected thereon.

The description of two of the farm lots call for one side of the tract of land involved, while the description of the other two farm lots call for the other side. There is no contention made that each of these farm lots does not contain the 40 acres which they were intended to embrace. The record does

not disclose that either of the deeds contain any explanatory language, which would justify the inference that the town of Refugio intended to convey other lands than those actually embraced within the boundaries of its deeds. At the time these conveyances were executed, the land in controversy did not possess any of the characteristics of a public thoroughfare or highway in a city or village, which is the common meaning of the word "street." Under this state of facts there is no ground for a presumption that the town of Refugio intended to convey that portion of the land in controversy. Couch v. T. & P. Ry. Co., 99 Tex. 464, 90 S. W. 860; Wyatt v. Foster, 79 Tex. 420, 15 S. W. 679. The rule is recognized in this state that, when a private individual, as the owner of a lot in a town or city, fronting on a street, conveys a lot, it is presumed that the intent of the grantor was to extend the grant to the middle of the street. This presumption arises out of the necessity of the case, as well as by reason of the fact that the owner of the fee to the street had dedicated the street to public use, but had reserved the fee in himself, subject to the acceptance by the public of the street dedicated. This presumption, however, does not exist under the facts of this case, since the town of Refugio, a municipality, owns the fee in the land, and has owned it at all times since the sovereign parted with the title. In such a case the presumption is that the grantor intended to keep, and the grantee understood that the grantor was keeping, the fee-simple title. A presumption cannot arise where the facts themselves are of contrary import. 4 R. C. L. p. 80, 87; Hardin v. Jordan, 140 U. S. 371, 397, 398, 11 S. Ct. 838, 35 L. Ed. 428; Smith v. Slocomb, 9 Gray (Mass.) 36, 69 Am. Dec. 274; Lembeck v. Nye, 47 Ohio St. 336, 24 N. E. 686, 8 L. R. A. 578, 581, 21 Am. St. Rep. 828; Perry v. Board of Com'rs of Caddo Levee Dist., 132 La. 415, 61 So. 511, 514; note in 30 Am. St. Rep. 853, and in 39 Am. St. Rep. 154.

In Ruling Case Law, p. 80, it is said: "The presumption primarily applies to conveyances by individuals. If a municipal corporation having title to the fee to a street conveys land as bounded on it, the title of the grantee does not impliedly extend to the middle, but is limited to the line of the street, because the legal intendment in such case is that it is to remain a public highway." In 9 C. J. p. 204, it is said: "A conveyance by a city of land bounded by a street of which it is the owner in fee, the title thereto being held in trust for street purposes, does not carry title to the center of the street, there being no presumption as in case of conveyances by individuals that a conveyance of land bounded on a street carries title to the center of the street." In Graham v. Stern, 168 N. Y. 517, 61 N. E. 891, 893, 85 Am. St. Rep. 694, it is said: "There is an ob-

vious and a material distinction between the case of a conveyance by an individual of lands bounded upon or by a street and that of a similar conveyance by municipal authorities. The presumption that obtains ordinarily in the one case * * * should be regarded as offset in the other by another presumption,—that the municipality would not part with the ownership and control of a public street once vested in it for the public benefit. * * * It is altogether the sounder proposition * * * that the grant of title to property bounded by or upon a city street, derived from the public authorities, in the absence of any more definite description, carries only to the line of the street."

The fact that the so-called "street" which is the land in controversy has never been opened or used, or the fact that the defendants in error have had it fenced since 1886, thereby excluding the public from any use of it, does not affect the question, since a municipality is not required by law to open all "streets," but is allowed to hold the land in reserve for "street" use, as and when the conditions may make actual use necessary. City of Corsicana v. Zorn, 97 Tex. 323, 78 S. W. 924; City of Laredo v. De Moreno (Tex. Civ. App.) 183 S. W. 827.

The facts in this case show that the petition contains no allegation to the effect that the plaintiffs in error were or are in a state of insolvency. Under the rules of equity, in order to state a cause of action, it is necessary for the pleading to show every essential fact affirmatively to entitle the petitioner to the injunctive relief sought in this case. The failure to allege the insolvency of the alleged wrongdoer raises the presumption that no such allegation could have been truthfully made, from which it is apparent that the defendants in error had an adequate remedy at law in a suit for damages. Article 4644, R. S. 1925, prescribes, among other things, that "no injunction or temporary restraining order shall ever be issued prohibiting sub-surface drilling or mining operations on the application of an adjacent land owner claiming injury to his surface or improvements or loss of or injury to the minerals thereunder, unless the party against whom drilling or mining operations is alleged as a wrongful act is shown to be unable to respond in damages for such injury as may result from such drilling or mining operations." We think the issuance of the injunction in this case violates this provision of the law and regardless of the rights of the parties finally to be adjudicated, we hold that the writ was improvidently issued at the time it was, and under the conditions then existing. We further hold that the owners of the four farm lots having purchased the quantity of land described within the boundaries of their deed, and having received such quantity the infer-

ences are, that they only acquired title to the land within the boundaries prescribed.

We therefore recommend that the judgment of the Court of Civil Appeals, affirming that of the district court, be reversed, and that the writ of injunction issued in this case be vacated.

CURETON, C. J.

Judgments of the District Court and Court of Civil Appeals reversed, and injunction vacated. as recommended by the Commission of Appeals.