**BEARDEN et al. v. SCHENECKER et al.**
(No. 9719.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 11, 1922. Rehearing Denied May 6, 1922.)

1. Boundaries ⬥48(6)—Acquiescence by adjoining owners in fence as marking division line is decisive.

Where a fence had for more than 30 years been recognized and acquiesced in as the true boundary between the two tracts, the successors in title of one of the adjoining owners can make no claim to a strip between the fence and the true line, as called for by the field notes.

2. Boundaries ⬥37(3)—Evidence held to sustain finding as to limitation of north line of tract.

Evidence that a fence had been recognized for more than 30 years as the north line of a tract, with testimony by the chain carrier for the surveyor who surveyed the tract identifying marks along that line as marked by the surveyor, held to sustain a finding that the line was along the fence, though it conflicted with the distance and direction of some of the calls.

3. Boundaries ⬥35(3)—Evidence as to marks not called for is admissible when given by witness accompanying surveyor.

The rule that objects indicating boundaries which are not called for in the field notes cannot be looked to for the purpose of locating the footsteps of the surveyor does not apply where a witness who accompanied the surveyor testified that those objects indicated the line marked by the surveyor.

4. Boundaries ⬥3(6)—Calls for north line of tract partitioned control calls for length of lines.

In a partition decree, calls for the north line of the tract partitioned control calls in field notes for the length of the north and south lines of the several tracts, especially where the undisputed evidence showed it was the intention of the parties to the decree to partition all of the tract.

### On Motion for Rehearing.

5. Boundaries ⬥3(8)—Estimates as to acreage in tracts partitioned are controlled by calls in field notes.

The estimates as to the acreage in the tracts described in the partition decree are controlled by the boundaries of those tracts as located by the field notes.

6. Mines and minerals ⬥73—Payment for estimated acreage does not deprive lessee of oil rights to excess included in description.

The lessee under an oil lease covering a tract set off to the lessor in partition is entitled to the entire tract partitioned, though it exceeded the estimated acreage, and he paid for his lease on the basis of the estimate.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by E. M. Schenecker and others against Mrs. N. O. Bearden and others to remove a cloud on the title to plaintiffs' oil lease. Decree for plaintiffs, and defendants appeal. Affirmed.

Grisham Brothers, of Eastland, and Miller & Miller, of Fort Worth, for appellants.

R. L. Carlock and Marvin H. Brown, both of Fort Worth, for appellees.

DUNKLIN, J. This controversy presents the issue of whether or not an oil and gas lease, under which the appellees claim, covered a strip of land consisting of 56/100 of an acre, which strip will hereinafter be referred to as the property in controversy. Appellees, who were plaintiffs in the court below, alleged that the defendants, who are appellants here, were setting up an erroneous claim of title to the land in controversy, free of the plaintiff's claim of a valid oil and gas lease, and that the defendants' claim was a cloud upon plaintiffs' lease which plaintiffs desired to have removed. From a judgment in favor of the plaintiffs for the relief prayed for, the defendants have prosecuted this appeal.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The property in controversy was a part of what is known as the W. A. Bearden tract, which was allotted to W. A. Bearden out of the Juana Selinas survey in a division and partition of that survey among the several owners of the different tracts therein. Another tract in that survey lying immediately north of and contiguous to the Bearden tract was allotted to N. E. Dabney in the same partition. According to the field notes of the deeds of the Dabney and Bearden tracts so set apart, it is shown that the south boundary of the Dabney tract and the north boundary of the Bearden tract was one and the same line. W. A. Bearden died, and there was a partition of his tract between his widow and their children. Mrs. Lizzie Queen was one of those children, and in the partition last mentioned, which was by a decree of court, a tract which was described as containing 15 acres was decreed to her. The tract so decreed to her is shown in the accompanying plat and is marked tract No. 2.

According to the plat it appears that tract No. 2 extends 342 varas north and south, and contains 15 acres. In the decree of partition which adopted and confirmed the report of the commissioners theretofore appointed by the court, lots 1 and 2 are described as follows:

"Lot No. 1, containing 15½ acres described by metes and bounds as follows: Beginning at the N. E. corner of said 121-acre tract. Thence S. with E. line of same, 342 vrs. to another corner of this survey. Thence W. passing corner of this survey at 107 vrs. continuing on 249½ vrs. in all, to stake for corner, it being also the S. E. corner of lot No. 2, hereinafter described.

"Thence N. 342 vrs. to the N. line of original 121-acre tract. Thence E. with said N. line 249½ vrs. to place of beginning, containing 15½ acres of land.

"Lot No. 2 containing 15 acres and described by metes and bounds as follows: Beginning at a stake in the N. line of said 121-acre tract, 249½ vrs. W. from the N. E. corner, the same being the N. W. corner of lot No. 1. Thence S. 342 vrs. to the S. W. corner of lot No. 1. Thence west with the N. line of lot No. 3 and continuing on 247½ vrs. in all to stake. Thence N. 342 vrs. to the N. line of 121-acre tract. Thence E. 247½ vrs. to place of beginning."

As shown by other portions of the commissioners' report, the tract referred to as "said 121-acre tract" was the W. A. Bearden tract above mentioned, and, according to the report of the commissioners and the decree of the court, tract No. 4 was described as containing 79.9 acres. The commissioners further reported that by actual calculation the W. A. Bearden tract contained a total of 125 acres instead of 121.3 acres. The oil and gas lease under which plaintiffs claim as assignees was executed by Mrs. Lizzie Queen and her husband to L. C. Turman, on November 20, 1918, which was prior to the decree of partition between the Bearden heirs. In that instrument the field notes of the entire Bearden tract were given, and, after so describing the same, the instrument contained the following:

"The said 121.3 acres belonging to several heirs and the partition of said land being in process of adjustment, it is understood that, in the event the partition of said land has been completed at this time, this lease is intended to cover, and does cover, the portion of said 121.3 acres set apart, or that may hereafter be set apart, by agreement or any partition suit, to the said Mrs. Lizzie Queen (née Bearden). It is also understood that the execution of this lease on the one-eighth (⅛) undivided interest of the said Lizzie Queen (née Bearden) gives to the lessee full authority to cause a partition of said land to be made by agreement; or by suit and to cause a portion of said land to be set aside and apart to the said Lizzie Queen in the event the partition now under process of adjustment fails of consummation."

The trial was before the court without a jury, and the trial judge's findings of fact are shown in the judgment rendered.

The dotted line on the plat north of the heavy line indicating the north boundary of the Bearden tract was found by the trial judge to be the true north boundary of the Bearden tract, and the land in controversy is a strip lying between the dotted line and the north boundary of the Lizzie Queen tract and the extensions of the east and west

lines of that tract to points of intersection with the dotted line. The southeast corner of lot No. 1 in the plat is a well-established corner, about which there is no controversy. If the northeast corner of the Bearden tract is located where the trial judge found it to be, namely, at the east end of the dotted line, then the distance from the southeast corner of tract No. 1 to that corner is 342 varas, plus 19.5 varas, or 19.5 varas farther north than called for in the field notes of the Bearden tract.

The finding of the trial court that the true location of the north boundary of the Bearden tract is the dotted line is challenged by appellants, and that is the first question to be determined here.

[1, 2] The deed to W. A. Bearden to his tract and the one to N. E. Dabney to his tract were both dated February 1, 1886, and the proof showed without controversy that shortly after that date Dabney built a fence on the line indicated by the dotted line of the plat for the purpose of inclosing his land on the south, and that ever since that time that line has been recognized and acquiesced in as the true and correct boundary between those two tracts by the respective owners. Under such circumstances it can hardly be doubted that the claimants under the Dabney deed own no title to the land in controversy, and that as between them and the claimants under the Bearden deed the title is vested in the latter. But independently of such recognition by the owners of the two respective tracts of the dotted line as the true boundary between those two tracts, we are of the opinion that there was other competent evidence sufficient to sustain the court's finding that such was the correct boundary. W. T. McArthur testified that he was one of the chain carriers at the time the surveyor surveyed the Dabney and Bearden tracts, and whose field notes were used in the deeds above mentioned to those two tracts, and that the lines of both tracts were run out at the same time. He further testified, in effect, that he assisted in driving a stake in the ground to mark the northeast corner of the Bearden tract and the southeast corner of the Dabney tract. The stake so driven has since disappeared, and cannot be found on the ground. But according to his testimony McArthur went upon the ground before the trial, and located the spot where the stake had been placed, which spot he testified was about six feet northeast of a post oak tree which had a surveyor's mark on it. He further testified that during that same survey the boundary between the two tracts was marked as the line was run, by hacks on the trees, the land being covered with timber, and on this line the division fence was built.

A short time before the trial, Henry Dickson, a surveyor, was employed to survey the disputed boundary in order to determine if possible, its true location. He was introduced as a witness on the trial, and testified to finding the marked post oak tree which was mentioned by McArthur in his testimony as being located about six feet distant from where he drove the stake. Dickson had never surveyed the land before. McArthur further testified that he had no special recollection of that particular tree, but that "there was a letter put on most every corner tree."

In the field notes of the Bearden and Dabney tracts as originally surveyed, those two tracts are specifically tied to each other, the field notes of the Bearden tract calling for its north line as being the south line of the Dabney tract and those of the latter tract reciting, in effect, that its south boundary was the north boundary of the Bearden tract. While in the field notes of the Bearden tract no stake is called for at its northeast corner, yet a stake is called for at that corner in the field notes of the Dabney tract. The marks which McArthur testified were placed on the trees to indicate the boundary line between the tracts were not called for in the field notes of either tract. The trial judge found the spot where McArthur testified the stake was driven to be the northeast corner of the Bearden tract and the true boundary between the two tracts to be the marked line testified to by McArthur.

Appellants have assigned error to the action of the court in admitting the testimony of McArthur and Dickson, referred to above, over their objections thereto. One of the propositions advanced by appellants reads as follows:

"Marked lines and marked objects denoting the footsteps of a surveyor cannot be given effect in determining the bounds of a survey in the absence of calls for such marked lines and marked objects in the field notes of the survey."

Another proposition made reads as follows:

"In the absence of a marked object at the northern terminus of the 342 varas line running north from the east terminus of the 107 varas line called for in the field notes of the Bearden tract, course and distance from the original Blackjack corner at the Western terminus of said 107 varas line, which is now found on the ground, must determine the location of the northeast corner of the Bearden tract."

[3] In support of those propositions, such authorities as the following are cited: M., K. & T. Ry. Co. v. Anderson, 36 Tex. Civ. App. 121, 81 S. W. 781; Anderson v. Stamps, 19 Tex. 460; Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Lyon v. Waggoner, 37 Tex. Civ. App. 205, 83 S. W. 46; Freeman v. Mahoney, 57 Tex. 621; Sanborn

v. Gunter & Munson, 84 Tex. 273, 17 S. W. 117, 20 S. W. 72. Those authorities all seem to be in accord with the general rule announced in the first case cited, to the effect that objects found upon the ground indicating boundaries which are not called for in the field notes of the deed cannot be looked to for the purpose of locating the footsteps of the surveyor.

Those decisions, however, we do not think are controlling in the present case, for the reason that it does not appear in those cases that the objects found on the ground were identified by the surveyor who made the survey, or by any other witness who was present with him at the time, as having been so placed to mark his footsteps. As noted, McArthur, who was one of the chain carriers, testified specifically and definitely as to the footsteps of the surveyor who ran the lines, and to find the footsteps of the surveyor is the chief purpose of all rules of construction. As noted further, the stake testified to by McArthur was actually driven to mark the northeast corner of the Bearden tract and the southeast corner of the Dabney tract; and the field notes of the Dabney tract called for a stake at its southeast corner. And although the stake is not called for in the field notes of the Bearden tract, the northeast corner of that tract is specifically made the same as the southeast corner of the Dabney tract.

The case of Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317, we believe is decisive of the question now under discussion in favor of the admissibility of McArthur's testimony complained of, and we do not believe that that decision is in conflict with the authorities cited by appellants. In that case, Chief Justice Gaines said:

"The lines as actually run and the corners as actually established when consistent with other locative calls fix the true boundaries of the survey. The location of such corners may be proved by any admissible evidence sufficient to lead to a belief of the fact. It may be that surveyors are careless in setting stakes at corners in a prairie where there are no natural objects to mark their exact locality, or that it is customary with them to use a stake for making corners of a very unstable character. Yet in the absence of proof to the contrary, it must be presumed that they have done their duty and have marked the corners with some object of reasonable permanence. Where a stake is once placed, it fixes the corner as conclusively as if marked by natural objects. Owing to the fact, that it may be removed or obliterated, its location may be more difficult of proof; but if proved it fixes the corner with the same certainty as where it is marked by a permanent object."

To the same effect are the following decisions: Rice Institute v. Gieseke (Tex. Civ. App.) 154 S. W. 612; Hermann v. Thomas (Tex. Civ. App.) 168 S. W. 1048; Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 118. And Dickson's testimony that he found the post oak tree which was testified to by McArthur as being six feet from where he drove the stake was corroborative of McArthur's testimony and admissible for that purpose, even though it be said that it was not admissible upon any other theory.

[4] The second question to be determined is whether or not the description of the land contained in the lease executed by the defendants to L. C. Turman, read in connection with the decree of partition between the Bearden heirs, was sufficient to include the land in controversy. And since the lease did not purport to cover any lands except such as might thereafter be partitioned to Mrs. Lizzie Queen, the controlling question is, Was the decree of partition sufficient to include the land in controversy in the 15-acre tract decreed to her? It appears that the commissioners who were appointed to make the partition, and whose report was adopted by the court, did not have the land surveyed, but prepared the field notes from deeds in their possession, but they intended that the Lizzie Queen tract should extend to the north boundary of the Bearden tract, and thus to include in that tract the strip which is now in controversy.

As shown in the decree of partition between the Bearden heirs, the northeast corner of tract No. 1 in the plat is called for as the northeast corner of the original Bearden tract and the north line of the Bearden tract is called for as the north boundary of tract No. 1. And in the field notes of the Lizzie Queen tract its northeast corner is made the same as the northwest corner of tract No. 1, and its northwest corner is fixed on the north boundary line of the original Bearden tract. Those calls control the calls for the length of the east and west lines of the Lizzie Queen tract, and had the effect to extend that tract to the north boundary of the original Bearden tract, which, as found by the trial court, was definitely located and fixed on the ground. Maddox v. Fanner, 79 Tex. 279, 15 S. W. 237; Baker v. Light, 80 Tex. 627, 16 S. W. 330; Goodson v. Fitzgerald (Tex. Civ. App.) 135 S. W. 696; Braumiller v. Burke (Tex. Sup.) 230 S. W. 400; Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 118, and decision cited; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317.

And especially is that true when the undisputed evidence showed that it was the purpose and understanding of all the parties to the decree of partition that the entire Bearden tract was in fact included in the decree, and since it is apparent from the face of that decree that the court intended to carry out that purpose. McCardell v. Lea (Tex. Sup.) 235 S. W. 518.

For the reasons indicated, the judgment of the trial court is affirmed.

On Motion for Rehearing.

The statement in our opinion on original hearing to the effect that the Juana Salinas survey was partitioned among several owners was not strictly accurate. Tinsley and Walker, former owners of that survey, made a settlement with numerous squatters who had settled on the land and were claiming title thereto by limitation, and in the settlement certain tracts claimed by the different squatters were set apart to them, Dabney and 'Bearden being among those claimants, and the tracts so set apart to them were the tracts referred to in the original opinion.

The oil and gas lease under which plaintiffs claim was executed by Mrs, Lizzie Queen and her husband to L. C. Turman, on November 20, 1918, as stated in our original opinion. In that connection we said that the execution of that lease was prior to the decree of partition by the Bearden heirs. It is insisted that that conclusion was erroneous. We will say now that the decree of partition bore the same date as the lease. But we fail to perceive how the fact that the lease was contemporaneous with the decree could have any material bearing upon our former conclusion. And the same observation applies to the further fact called to our attention in the motion for rehearing that the partition fence between the Dabney tract and the Bearden tract was not built until after Bearden's death; the fact being that the fence was acquiesced in by the Bearden heirs and owners of the Dabney tract as marking the correct division line between the two tracts.

[5] At the time of the partition between the Bearden heirs it was supposed that 15 acres was the extent of Mrs. Lizzie Queen's interest in the survey, and that the extent of interest owned by the other heirs was, as shown in the plat appearing in our original opinion; in other words, it was not supposed that there was any excess in the tract over and above the aggregate of the several interests estimated to be owned by each claimant, as shown in the plat. The field notes of the several tracts were given in the decree of partition, and they should be given controlling effect over the estimates so made; and we will add that they were intended to be made contiguous to each other.

[6] Nor do we think that the fact that the lease in controversy under which appellees claimed was procured and paid for upon the supposition that it contained only 15 acres instead of 15.56 acres should be given controlling effect in determining the north boundary of that tract, ·contrary to the boundary fixed by the decree of partition.

With the corrections above noted, the motion for rehearing and also the motion to certify will be overruled.