**MAGNOLIA PETROLEUM CO. et al. v. KING.**
(No. 10910.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 10, 1925. Rehearing Denied Feb. 21, 1925. Writ of Error Dismissed for Want of Jurisdiction April 1, 1925.)

1. **Contracts ⬦169—Situation of parties to ambiguous contract may be looked to to ascertain intention of language used.**

Situation of parties to ambiguous contract may be looked to to ascertain intention of language used.

On Motion for Rehearing.

2. **Mines and minerals ⬦79(1)—Common carrier of oil held liable, under agreement or division order for oil produced on disputed strip.**

Where petroleum company, transporting oil from wells as common carrier, agreed by so-called "division order" to pay, to assignee of royalty interest, his assigned proportion of the royalty of the lease, being of "lot 2, containing 15 acres," held that such description included all land legally covered by the description of lot 2, and hence included the oil from a .56 acre disputed strip which by subsequent litigation between the parties to the lease and others was determined to be included within lot 2, although the effect of such determination was that the area of lot 2 was 15.56 acres instead of 15 acres.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by F. B. King against the Magnolia Petroleum Company and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

A. S. Hardwicke and W. H. Francis, both of Dallas, for appellant.

Carlock & Carlock, of Fort Worth, for appellee.

DUNKLIN, J. As shown in the opinion of this court appearing in the case of Bearden v. Schenecker, 240 S. W. 996, there was a judicial partition of a tract of land, a part of the Juana Selinas survey in Eastland county, which was known as the W. A. Bearden tract, between the widow of W. A. Bearden and their children. In the decree of partition, a tract of 15 acres was set aside to Mrs. Lizzie Queen, one of those children. That tract was described by metes and bounds in which the field notes fixed the north boundary as coincident with the south boundary of another tract owned by N. E. Dabney. Mrs. Lizzie Queen, joined by her husband, executed an oil and gas lease upon the tract so set apart to her. In a suit between the assignees of that lease as plaintiffs and the widow and children of W. A. Bearden, it was determined that the tract so set apart to Mrs. Lizzie Queen in fact included 15.56 acres instead of 15 acres as designated in the partition decree; the .56 acres being in an irregular shape lying north of the plat of the 15 acres, shown as tract 2 in the plat, which tract was set apart to Mrs. Lizzie Queen.

The suit reported in 240 S. W. 996, was a controversy between the widow and heirs of W. A. Bearden and the assignees of the oil and gas lease above mentioned; as to whether or not the 15-acre tract extended northward to the south boundary line of the Dabney tract. In other words, the controversy in that suit between the parties was whether or not the irregular strip containing .56 of an acre, lying north of the tract that was decreed to Mrs. Lizzie Queen, was in fact included in that tract. That the disputed strip was included in and covered by that tract was finally settled by the decree rendered in that suit, which was affirmed by this court.

In the oil and gas lease executed by Mrs. Lizzie Queen and her husband, referred to above, a royalty interest of one-eighth of all the oil and gas that might be produced from the land by the lessees and assignees thereof was reserved to Mrs. Queen. Thereafter, on May 16, 1919, she and her husband executed a deed, which was duly recorded in the deed records of Eastland county, conveying to F. B. King an undivided one-fourth of that royalty interest. The oil and gas lease was executed by Mrs. Queen and her husband to L. C. Turman, and, by successive assignments from Turman and other parties claiming through him, Paul W. Smith, A. T. Jergins, and George H. Campbell became the final owners of the lease.

On June 30, 1919, Mrs. Lizzie Queen, joined by her husband, executed to T. F. Grisham an oil and gas lease on the .56 excess acre, which was the disputed strip in controversy determined in Bearden v. Schenecker, reported in 240 S. W. 996. Grisham assigned that lease to the Alamo-Duke Oil Company, who drilled a well on that strip which produced large quantities of oil. The Magnolia Petroleum Company was engaged in the business of common carrier, transporting oil from wells in that vicinity, and as such common carrier received and transported a large quantity of oil that was run from the well drilled by the Alamo-Duke Oil Company on the disputed strip of .56 acre, as well as from the wells drilled on the 15 acres lying south of the disputed strip, and described in the plat as lot 2, set apart to Mrs. Lizzie Queen in the partition decree.

The present suit was instituted by F. B. King against the Magnolia Petroleum Company to recover one-fourth of the one-eighth royalty interest of Mrs. Lizzie Queen in the oil which the defendant company received and transported from the Alamo-Duke well; and, from a judgment in plaintiff's favor for

the sum of $3,061.20 as plaintiff's portion of that oil, the defendant has prosecuted this appeal.

The plaintiff's suit was based upon an instrument in writing, dated August 9, 1919, which was accepted by the defendant company and signed by Paul W. Smith, A. T. Jergins, E. M. Schenecker, Lizzie Queen, W. D. Queen, her husband, and F. B. King. The agreement was designated as a "division order," addressed to the Magnolia Petroleum Company, and reads in part as follows:

"The undersigned certify and guarantee that they are the legal owners of Paul W. Smith et al. Wells No. 1 and up on Lizzie Queen farm, more particularly described as follows: Lot No. 2 containing 15 acres of land set apart to Mrs. Lizzie Queen in the partition of the W. A. Bearden lands, in Eastland county, state of Texas, including the royalty interest, and you are authorized to receive oil from said wells and pay the owners for their respective interests stated to be as follows:

| To | Division of Interest. | P. O. Address. |
|---|---|---|
| Paul W. Smith and A. T. Jergins | ½ of ⅞ W. I. | |
| E. M. Schenecker and Geo. H. Campbell | ½ of ⅞ W. I. | |
| Mrs. Lizzie Queen and husband Wm. D. Queen | ¾ of ⅛ R. I. | 1206 11th St. Douglass, Arizona. |
| F. B. King | ¼ of ⅛ R. I. | Douglass, Arizona. |

"The undersigned (referred to as 'owners' or 'sellers') hereby authorize Magnolia Petroleum Company to connect with the above wells and receive all oil produced therefrom during the continuance of this contract, they to be paid for said oil according to their respective and several interests, as above set forth, same to be received and purchased from said parties severally in the proportion named, subject to the following conditions:

"(1) The oil run hereunder shall become the property of the Magnolia Petroleum Company, and title to same shall pass to it as soon as the same is received into its custody.

"(2) The oil received under this division order shall be paid for by the purchaser (Magnolia Petroleum Company) to the party or parties entitled thereto, according to the division of interests shown above, at the price posted by the Magnolia Petroleum Company for the same kind and quality of oil in the particular field in which it is received on the day on which it is received by purchaser into its custody.

\* \* \* \* \* \* \* \*

"(6) In case of any adverse claim of title to the property or the production therefrom, the owners (sellers) respectively agree to furnish Magnolia Petroleum Company satisfactory evidence of title, or, failing so to do, furnish upon reasonable demand satisfactory indemnity against such adverse claim or claims; and the said Magnolia Petroleum Company may retain the purchase price of the interest adversely claimed until the owner or owners thereof do so, or until the dispute as to ownership is settled."

The trial was before the court without a jury, and the following are the findings of fact and conclusions of law filed by the trial judge:

"(1) The well designated in the testimony as the Alamo-Duke well was located within the boundaries of the tract set apart to Lizzie Queen in the partition of the W. A. Bearden lands between the heirs of W. A. and N. O. Bearden, in the district court of Eastland county; the said tract so set apart to the said Lizzie Queen being designated in the partition as lot No. 2.

"(2) The true north line of the Bearden tract called for in the said partition proceedings extended to the north of the Alamo-Duke well, and placed the said well to the south thereof and within the area of lot No. 2, set apart to Lizzie Queen in the said partition.

"(3) The true north line of the said W. A. Bearden tract coincided with the fence originally placed between the Dabney tract and the Bearden tract. The said fence was placed upon the surveyed line about the year 1892, and remained as the division line between the two said tracts for a period of about 25 years, and was treated and considered by the respective owners of the said tracts as representing the true north line of the Bearden tract and the south line of the Dabney, and the adjacent property owners and holders held and claimed up to the said division line.

"(4) On the 16th day of May, 1919, Lizzie Queen and her husband, W. D. Queen, executed a valid conveyance of an undivided one-fourth of a one-eighth royalty interest in and to all of the oil and gas that might thereafter be produced from their tract of 15 acres in the said Bearden survey to the plaintiff F. B. King, which said deed was duly recorded in the deed records of Eastland county, Tex., on, to wit, the 4th day of June, A. D. 1919.

"(5) On, to wit, the 20th of November, 1918, Lizzie Queen and her husband, W. D. Queen, did execute a valid lease to L. C. Turman to develop oil on their said tract in the Bearden survey for certain considerations named, and also retaining a one-eighth royalty interest in all the oil and gas that might be obtained from the said land. The said lease was duly recorded in the deed records of Eastland county, Tex., on or about said date. The same was on the day of November, 1919, duly assigned by the said L. C. Turman to E. M. Schenecker and George H. Campbell, which said assignment was also duly recorded in the deed records of Eastland county, Tex., on or about said date.

"(6) The said Schenecker and Campbell and their associates under said lease put down three oil wells upon the said lot No. 2, known as the Lizzie Queen tract or farm. The interest of the plaintiff in the oil produced from the said three wells has been fully paid to the plaintiff.

"(7) About October or November, 1920, a concern calling itself the Alamo-Duke Company, without any right or authority from the said Schenecker and Campbell and their associates and the plaintiff herein to drill an oil well upon the said tract, nevertheless, without any right or authority, entered upon the said tract which was leased to the said Schenecker and Campbell and undertook to put

down a well within the boundaries of the said tract, and near the northeast corner thereof, and to the south of the old division fence that marked the north line of the Bearden survey. The said Schenecker and Campbell and their associates and the plaintiff at all times claimed that the said well was upon their tract of land, and that they were entitled to their respective interests therein; the plaintiff's interest therein being a one thirty-second of the oil and gas produced from the said entire tract, which included the Alamo-Duke well.

"(8) On August 9, 1919, the defendant Magnolia Petroleum Company accepted a division order executed by Paul W. Smith and A. T. Jergins, E. M. Schenecker and George H. Campbell, Lizzie Queen and husband, W. D. Queen, and F. B. King, set out in the testimony, the interest of the plaintiff F. B. King being recited as a one-fourth of a one-eighth royalty interest, and the said division order applied to the oil from all wells that might be produced by the said Paul W. Smith and others upon the Lizzie Queen tract or farm, and more particularly described as lot No. 2, set apart to the said Lizzie Queen in the partition of the W. A. Bearden lands in Eastland county, Tex. In this division order the defendant Magnolia Petroleum Company undertook and agreed to pay to the respective parties who signed the said division order the market value of their respective interest in the said oil as run into their pipe line.

"(9) The reasonable fair market value of the one thirty-second interest in the oil run from the said Alamo-Duke well into the pipe line of the defendant Magnolia Petroleum Company, and appropriated by it, amounted to the sum of $2,887.91, which said amount was the property of the plaintiff F. B. King, and the defendant Magnolia Petroleum Company has never accounted to the plaintiff for any part of the same.

"(10) Independent of the said division order, the said defendant Magnolia Petroleum Company received into its possession and appropriated to its use the plaintiff's proportion of the oil run from the said Alamo-Duke well into its pipe line, and the reasonable value thereof is the sum of $2,887.81.

"(11) There was a suit brought in Eastland county in the fall of 1920, by E. M. Schenecker et al. against the Bearden heirs, involving the title and ownership of the said Alamo-Duke and the production therefrom, and the said litigation created a controversy as to who were the rightful owners of the said oil, and was not finally terminated until the decision of the Court of Civil Appeals was rendered in said cause in the spring of 1922.

"(12) Under the terms of the said division order, executed by the plaintiff and others to the defendant Magnolia Petroleum Company, the money received by it from the said Alamo-Duke well on account of the oil run was properly withheld until the said suit was finally terminated.

"(13) The defendant Magnolia Petroleum Company still has in its hands, from the oil received by it from the said Alamo-Duke well, the above sum of $2,887.81, which it has never paid to any one.

"Conclusions of Law.

"(1) The plaintiff was at all times testified to in this case the true and lawful owner of a one thirty-second interest in the oil and gas produced from the said Alamo-Duke well, and he is entitled to recover of the defendant Magnolia Petroleum Company the reasonable value thereof, to wit, the sum of $2,887.81, together with interest thereon from the date of the filing of this suit, to wit, September 27, 1922, at the rate of 6 per cent. per annum, making the total amount for which the plaintiff is entitled to judgment, to wit, the sum of $3,061.20.

"(2) The plaintiff is entitled to recover, either upon the division order hereinbefore set out, or upon the ground that the plaintiff was the rightful owner of the one thirty-second interest of the oil produced from the Alamo-Duke well, and the defendant Magnolia Petroleum Company with knowledge, both actual and constructive, of the plaintiff's rights therein, took the same into its pipe line and used and appropriated the same, thereby creating a valid claim of indebtedness in favor of the plaintiff against the said defendant company for the reasonable market value of his said interest in the said oil as above set out."

Prior to the execution of the division order, Smith, Jergins, Schenecker, and Campbell had begun the operation of the lease and had drilled two wells thereon. On the same day the lease was executed, the defendant company began to take oil, from those wells and continued to do so until July 27, 1920, and accounted to the other parties to the instrument for their respective interests in the oil as stipulated in the division order.

G. A. Young, who had charge of the oil run and oil purchasing department of the defendant company, testified that in running oil from leases the custom of his company was to identify wells and property from which the oil is taken by the name of the operator of the well, followed by the name of the owner of the land or the lease on which the wells are located.

George Campbell testified that oil wells are usually designated by the names of the operators, and that the Alamo-Duke well was usually known as such, and was drilled by the company of that name.

No parol testimony was offered to show any discussion between the parties to the division order, referred to above, as to what wells were embraced in that agreement. And whether the terms of that instrument themselves, considered in conjunction with the record title of F. B. King in ¼ of ⅛ of the royalty interest in the disputed strip, on which the Alamo-Duke well was drilled, and all the other surrounding facts and circumstances in evidence, supported the recovery awarded to plaintiff King, based on the contract evidenced by the division order, is the principal question presented for our determination. After mature consideration,

we have reached the conclusion that that question should be decided in the affirmative.

At the time that contract was entered into, Paul W. Smith, A. T. Jergins, E. M. Schenecker, and George H. Campbell held title by conveyances duly recorded to a lease on all of the tract that had been awarded to Lizzie Queen, which included the strip on which the Alamo-Duke well was drilled. The deed records also showed that Mrs. Queen and F. B. King also owned the royalty interest in that tract in the proportions set out in the division order. That being true, it is a reasonable inference that the defendant recognized such exclusive ownership, in agreeing to pay to those persons the proportions of oil set out in the order; and that none of the parties to the contract contemplated that any part of that tract would be drilled for oil by any one claiming adversely to those interests, but that all parties to the instrument intended and understood that the same covered and included all the oil that might be produced from the Lizzie Queen tract. Furthermore, on December 9, 1919, Smith, Jergins, Schenecker, and Campbell served upon defendant a written notice of their claim of ownership of the lease on the disputed strip, of the fact that the Alamo-Duke Oil Company had just brought in a well on that strip, and of the institution of the suit by Smith and associates against the Alamo-Duke Oil Company, involving title to the lease of the disputed strip, and of the oil produced therefrom. The notice contained the warning to defendant not to pay over to the Alamo-Duke Oil Company or its assignees any of the proceeds of oil from the well drilled by it, pending the final determination of the suit mentioned in the notice. And by letter of date December 30, 1919, the defendant company replied, acknowledging receipt of the notice, and saying that the defendant would withhold all payments to the Alamo-Duke Oil Company until the controversy involved in the suit was satisfactorily cleared up.

[1] The language used in the division order, with reference to the wells from which the oil was to be taken, is not clear and definite, and under such circumstances it is a familiar rule that the situation of the parties and surrounding circumstances known to them may be looked to for the purpose of ascertaining what they really intended by the language used. Coffin v. Douglass, 61 Tex. 406; Smith v. Brown, 66 Tex. 543, 1 S. W. 573; 13 Corpus Juris, 542, 543.

We are of the opinion, further, that the findings of fact by the trial judge are sufficiently supported by the evidence. We concur in appellants' contention that plaintiff's right of recovery was by his pleadings limited to the division order as a basis for relief, but we conclude that the judgment should be affirmed upon that theory. All other assignments of error are overruled.

Affirmed.

### On Motion for Rehearing.

It appears from the statement of facts that the Alamo-Duke well was drilled under and by virtue of the lease executed by Mrs. N. O. Bearden, Mrs. Lizzie Queen, and the other Beardon heirs on the .56 acre, which was the disputed territory. That lease was executed after the execution of the first lease by Mrs. Lizzie Queen to L. C. Turman and the assignment by the latter to Schenecker and Campbell, and after the conveyance by Mrs. Queen to F. B. King of a one-fourth interest in the royalties on the 15-acre tract. On November 4, 1919, another division order, addressed to the Magnolia Petroleum Company and accepted by it, was executed by several of the Bearden heirs, stipulating that they were to receive certain interests in the royalty runs from the Alamo-Duke well. The acceptance of that division order would warrant the inference that the Magnolia Petroleum Company and the other parties to the instrument then believed that the .56 acre in dispute was not included in the Lizzie Queen tract, and that therefore the division order theretofore executed, and upon which this suit was based, did not include oil from the Alamo-Duke well. It is earnestly insisted that the evidence does not support the finding by the trial court to the effect that the division order in controversy here included the oil from the Alamo-Duke well as well as the oil from the remainder of the Lizzie Queen tract.

Stress is laid on the testimony of George Campbell and G. A. Young, to the effect that oil runs are usually designated by the names of the operators, and that the Alamo-Duke well was usually known as such because drilled by a company of that name. There is nothing in the evidence tending to show that that custom was discussed between the parties at the time the division order relied on in this suit was executed, or that the parties who executed it had any knowledge of such a custom, or that the custom could have had any material bearing upon the question as to what oil was intended to be included within the scope of the division order. Such testimony could have no bearing except as tending to show that, at the time the appellant company accepted the second division order, its officers and other parties thereto then believed that the Alamo-Duke well was not on any portion of the Lizzie Queen 15-acre tract, and for that reason was not one of the wells contemplated in the division order sued on. That is apparent from the fact that the second division order was not executed by F. B. King or Schenecker or Campbell, who executed the first division order.

The following are excerpts from 1 Beach on Modern Law Contracts:

"Sec. 719. Where the language of an instrument is ambiguous and susceptible of more than one construction, that construction will be adopted which, in the light of the surrounding circumstances, and upon a view of the whole instrument, is in accordance with the apparent intent of the parties. In order to arrive at the intention of the parties, inquiry may be made as to their situation at the time the contract was entered into and the purpose to be accomplished by its execution. In the construction of contracts, it is the duty of the court to put itself as near as may be in the situation of the parties, from a consideration of the surrounding circumstances and the occasion and apparent object of the parties, determine therefrom the meaning and intent of the language employed in framing their agreement."

"Sec. 721. If the words or terms of a contract are equivocal, resort may be had to the circumstances under which the contract was executed, and to the contemporaneous construction given to the contract by the parties. The subsequent acts are admitted to show how the parties understood their contract and are a practical construction of it. It makes no difference whether these acts are contemporaneous or subsequent. It is allowable to look to them for assistance in ascertaining the true meaning of the agreement. It is a familiar doctrine that when the terms of an agreement are in any respect doubtful or uncertain, and the parties to it have by their own conduct placed a construction upon it which is reasonable, such construction will be adopted by the court, because it is the duty of the court to give effect to the intention of the parties, where it is not wholly at variance with the correct legal interpretation of the terms of the contract."

The stipulations in the division order sued on clearly show that the appellant company, by the acceptance of that order, understood that it was dealing with every person who had any interest in the oil produced from the Lizzie Queen tract, and that it was in the contemplation of the parties that all the oil produced from that tract should be delivered to the appellant company. That such was the understanding is evidenced further by the fact that the appellant company settled with the parties to that contract for all the oil thereafter produced from the 15-acre tract, exclusive of the .56 acre strip on which the Alamo-Duke well was drilled. In the division order the boundaries of the Lizzie Queen tract were not given, but it was referred to as "lot No. 2, containing 15 acres of the land set apart to Mrs. Lizzie Queen in the partition of the W. A. Bearden Lands." However, the decree of partition referred to was a partition of a tract of 121 acres out of the Juana Selinas survey, the north boundary of which was the south boundary of the Dabney tract, and also the north boundary of the disputed strip, as described in the lease made by the Bearden heirs, under which the Alamo-Duke well was drilled. It must be inferred that the parties to the instrument understood that description to include all the land that was legally covered by that description.

[2] We have been cited to no circumstances in the evidence or testimony tending to show that the parties to the division order had any reason or motive for confining the scope of the agreement to the oil from wells drilled by any particular persons. The more reasonable construction, to which all the circumstances point, is that the agreement intended to cover all oil produced from the Lizzie Queen tract by whomsoever the wells might be drilled; and the fact that the appellant company erroneously concluded that the Alamo-Duke well was not within the boundaries of the Lizzie Queen 15-acre tract could not have the legal effect to limit the proper scope of the division order or release appellant from its obligation to the other parties to the agreement.

As said in opinion on original hearing, the plaintiff's right of action was based solely upon the division order, and we gave no effect to the conclusion of the trial court that plaintiff was entitled to recover independently of that contract.

The motion for rehearing is overruled.