**VIRECA CORPORATION v. COLE et al.**

No. 5231.

Court of Civil Appeals of Texas. Texarkana.

May 3, 1939.

Rehearing Denied May 11, 1939.

A. D. Dyess and Joel W. Cook, both of Houston, for appellant.

Wynne & Wynne, Wm. A. Wade, and Philip Brin, all of Longview, and Read, Lowrance & Bates, of Dallas, for appellees.

JOHNSON, Chief Justice.

This case was filed by Vireca Corporation as plaintiff against M. T. Cole, Amerada Petroleum Corporation, Lee & Burnett, a partnership, C. A. Lee and R. W. Burnett, individually, R. W. Washburn, and Frank Cole, as defendants. Plaintiff's third amended original petition on which it went to trial is in form a statutory action of trespass to try title, in which plaintiff seeks to recover the title and possession of the ⅞ oil and gas leasehold estate in and to fifteen acres of land consisting of the south end of a survey patented in 1931 to M. T. Cole. Said M. T. Cole Survey was formerly known as the A. (Little) Park survey or "little A. Park Survey" and is referred to in the record sometimes as the Cole survey and sometimes as the Park survey. Plaintiff specially pleaded its title and alleged that it was the owner of an oil and gas lease, executed by M. T. Cole and wife to W. W. Bradley, insofar as said lease covers the south fifteen acres of said Cole survey. The petition also alleges facts embracing the contention that the west line of the Cole survey should not run a south course from its northwest corner as called for in the patent, but that it should take a southwest course coinciding with M. T. Cole's west fence line. It being plaintiff's contention that the surveyor who made the survey upon which the patent was issued to Cole actually surveyed said west line on the ground in a southwest course along the west side of a fence previously constructed by Cole, instead of surveying a south course as described in his field notes contained in the patent; and as thus applied to the ground the field notes of the Cole survey would cover and include a triangular strip of ground consisting of approximately two acres of land contained in an oil and gas lease executed (subsequent to the Bradley lease) by M. T. Cole and wife to Frank Cole and now owned by defendants Frank Cole, C. A. Lee and R. W. Burnett, which two acres of land is described in said Frank Cole lease as being located in the E. H. Grisham survey and "bounded on the east by the West line of the little A. Park survey, patented to M. T. Cole."

Defendants C. A. Lee, R. W. Burnett, Frank Cole and R. W. Washburn answered and specially excepted to certain parts of plaintiff's petition. Their answer contains a general denial and specially denies that any of the land described in the Frank Cole lease is situated in the M. T. Cole survey, as that survey was originally surveyed and laid out on the ground. These defendants specially alleged that all the Frank Cole lease lies west of the West line of the Cole survey and in the Grisham survey. The answer also contains a plea of not guilty, a plea for improvements made in good faith, and a cross action by defendants C. A. Lee, R. W. Burnett, and Frank Cole against plaintiff for the ⅞ leasehold estate covering the land described in the Frank Cole lease.

The defendant M. T. Cole disclaimed any interest in the leasehold estate in controversy, except as to his rights reserved therein as lessor.

On trial of the case plaintiff introduced the depositions of M. T. Cole, in which he testified on direct examination by plaintiff that in 1918 he purchased from Mrs. E. L. Walker, among other lands, the following tract: "It being known as the Little Park Survey and contains 32 acres of land, more or less, and further described as follows: Bounded on the north by a strip of public land and the Sabine River, and on the east by the J. M. Meador Survey; and on the south by the Samuel Brooks

Survey; on the west by the Grisham and Tate Surveys."

Cole further testified, in substance, that in the fall of 1922 or the spring of 1923, he fenced his land which included the building of a fence along his west line, between the above described Little (A.) Park survey and said Grisham survey on the west thereof. It will be here observed that in the above description of the Park survey as purchased by Cole from Walker, the West line of the Park is described as bounded "on the West by the Grisham." The Northeast corner of the Grisham and the Northwest corner of the Park is a common point. The Northeast corner and the East line of the Grisham is described as follows: " * * * stake, from which a white oak 14 in dia. brs. South 9 vrs another 14 in dia. brs. East 12 vrs; thence South 960 vrs to corner; thence West 1700 vrs. to the place of beginning."

One of the white oak trees above called for at the Northeast corner of the Grisham is still standing, and that corner is admittedly established. Questioned as to whether he built his pasture fence on the boundary line between the Park survey to the east and the Grisham survey to the west, Cole testified:

"Q. Did you build a fence along your West line between you and uncle Billie Walker's land in the E. H. Grisham Survey? A. Just built a (fence) line through there but no stated place to do it. I just picked out a line of blazed trees. There is several lines through there, and I just picked out the blazed trees. No surveyor staked me off a fence row or anything like that. I meant to get around the land."

He further testified to the effect that he picked out the oldest marked line he found and that he built his fence on what he thought, at the time, was the West line of his land.

"I picked out the one I thought was about the (Northeast) corner of the Grisham at the time; the best I could pick it out there. There was no stob or nothing to start from there. * * * I meant to get on the line. I meant to get about right, but not knowing, of course, I didn't know."

It appears in evidence that this fence built by Cole began at a point east of the above mentioned white oak tree at the Northeast corner of the Grisham and runs a Southwest course to the North line of the Brooks survey, instead of the South course that is called for in the Grisham

patent describing its West boundary line. Cole further testified to having found in 1928 that he did not have a patent to the Park survey; that he employed Mr. Choice to survey the land for him, for the purpose of purchasing the land from the State and obtaining a patent thereto, in the exercise of his right as a preferred purchaser under the law. Mr. Choice surveyed the land, assisted by M. T. Cole as flagman, Martin Cole and Ralph Cole, sons of M. T. Cole, as chain carriers. Upon the field notes prepared by Choice from this survey, a patent was issued to M. T. Cole in 1931, describing the land as follows:

"Beginning at the NE corner of the S Brooks H/R Survey, on the W line of the Judson Meador Survey, a pine knot for corner; Thence N 896 varas to corner, on river, the NW corner of said J Meador Survey;

"Thence N 52 W with river 295 varas to a corner of the Grisham H/R Survey, from which a white oak brs W 3 vrs;

"Thence S 1075 varas to the N line of said Brooks survey;

"Thence E 229 varas to the place of beginning. Bearings marked X."

It will be here observed that the Northeast corner of the Cole survey as described in the patent to Cole calls for a corner (N.E.) of the Grisham and for the white oak tree at that corner. The Southeast, Northeast, and Northwest corners of the Cole survey are undisputedly established on the ground as described in the patent. The Southwest corner of the Cole survey is not described, except by course and distance, its location on the ground is disputed. The Southeast corner of the Grisham is not described except by course and distance, and its location on the ground is disputed. The East line of the Grisham is described only by a call to run a South course from its Northeast corner established by the white oak tree. Location on the ground of the East line of the Grisham is disputed. The West line of the Cole survey is described only by a call to run a South course from its Northwest corner established by the white oak tree. Location on the ground of the West line of the Cole survey is disputed.

The oil and gas lease executed by Cole to Bradley, referred to as the Bradley lease, and certain corrections thereof, describe the land as described in the Cole patent. The assignment of the South fifteen acres of the Bradley lease to plaintiff

described the South fifteen acres as follows:

"Beginning at the NE corner of the Samuel Brooks HR Survey an iron stake set by a previous surveyor and accepted and identified as the corner;

"Thence North 1027 feet to a pine stake set for the N E corner of the herein described lease;

"Thence West 636 feet to a line stake set for the NW corner of the herein described lease;

"Thence South 1027 feet to an iron stake set in the North line of the Brooks HR Survey for the SW corner of the herein described lease and for the SE corner of the Grisham HR Survey;

"Thence East 636 feet to place of beginning, containing fifteen (15) acres of land."

The land covered by the Frank Cole lease, held by defendants, is described as follows:

"Bounded on the West by the East line of a tract of land described in Deed from W B Walker to W D Lacy dated January 17th, 1928 and recorded in Volume 57, page 507 and 508 Deed Records of Gregg County, Texas, in the E H Grisham Survey;

"Bounded on the South by the North line of the Samuel Brooks Survey;

"Bounded on the east by west line of the little A. Park Survey, patented to M. T. Cole;

"The North Corner of tract described herein is common corner with the Northeast corner of said tract described in deed from Walker to Lacy and the Northwest corner of said A Park Survey, patented to M. T. Cole,

"The tract herein described being that portion of the E H Grisham Survey lying within the enclosure of Lessor, M T Cole, containing approximately 2 acres of land."

Plaintiff claims that the two-acre tract of land above described in the Frank Cole lease, as being in the Grisham survey and West of the West line of the Cole survey, is in fact within the land patented to Cole and is East of the West line of the Cole survey, therefore within plaintiff's lease. The contention is predicated upon the fact that when the field notes as described in the Cole patent are attempted to be applied to the ground there appears a shortage, it is testified, in the North line of 28 varas and in the South line of 27 varas, less than the distance called for in the patent. Whereupon plaintiff contends that the surveyor, Mr. Choice, in making the survey upon which the Cole patent was issued actually surveyed the West line thereof in a Southwest course from the white oak tree at the Northeast corner of the Grisham, running along the West side of his pasture fence to the North boundary line of the Brooks survey, instead of the South course as described by Choice in his field notes contained in the patent. Should the West line of the Cole survey be laid upon the ground from said white oak tree to run in a Southwest course along the West side of Cole's fence to the North line of the Brooks survey, as contended for by plaintiff, the land in controversy would thereby be included in the Cole survey and within plaintiff's lease. If said West line be laid upon the ground from said white oak tree in a South course as described in the patent, it would intersect or cross to the East side of Cole's fence at a point "after reaching high land" coming out of the Sabine river bottom, thence run along the East side of the fence to the Brooks North line, and would place the land in controversy West of the West line of the Cole survey as described in the Frank Cole lease, and without the boundaries of plaintiff's lease. The issue as to where upon the ground the surveyor, Choice, surveyed the West line of the little A. Park or Cole survey was controverted in the testimony. The surveyor, Choice, was dead. M. T. Cole and his two sons, Ralph and Martin Cole, each testified to having assisted Choice in making the survey. Their testimony is to the effect that Choice actually ran a south course from said white oak tree, along the West side of the fence until reaching the high land coming out of the bottom, there intersected or crossed through the fence by off-setting two flag poles to the East, thence continuing South, on the East side of the fence, to the North boundary line of the Brooks, there set back two flag poles for the Southwest corner, which corner was East of Cole's Southwest fence corner. On the other hand, the testimony of plaintiff's witnesses, E. S. Rest and J. J. White, both of whom were surveyors, would tend to show from a survey made by each of them, that Choice in surveying the West line of the Cole from said white oak tree (referred to in their testimony as point C) ran a Southwest course to the North line of the Brooks survey (referred

to in their testimony as point D). Especially so is the testimony of Mr. White. He testified that he found marks on trees which he recognized as Choice's marks running a Southwest course along the West side of Cole's fence from point C to point D, quoting:

"Q. What trees did you find—what marked trees did you find on lines 'D' and 'C' at the time you made your survey and what fence or remains of a fence did you find on that line? A. Leaving the white oak—the big white oak?

"Q. At point 'D' (meaning C). A. Coming south we will call it, it takes in about 1000 or 1100 feet across a wooded slough that has always overflowed with oil waste. When we got on the south bank of that slough, we found the northwest corner of a fence, a hog wire fence.

"Q. When you came to that fence running the course which you had determined would be the course to run, did you find a line to the west or to the east of that fence? A. To the west of that fence some eight or ten feet.

"Q. Mr. White, after you found that fence, tell this jury what lines you found on the line you ran immediately adjacent thereto as you surveyed on down to point 'C'? (meaning D) A. I found from the north end of the fence, south to the north line of the Brooks, there was some 10 or 12 trees marked for lines at three different times, I will say three different ages of marks, the oldest one of the three trees being a red oak, then a post oak and the next a hackberry there, say within 200 yards or 600 feet which had very old marks; and then the next age marks, it looked like from 25 to 40 years old. Then, about as near as I can judge a tree without digging into it, the newer mark or the youngest mark was 10 or 12 years old, apparently.

"Q. Did you recognize any marks on that line ·as having been made by Mr. Choice? A. Yes, sir, by the date of his field notes. Of course, I have no means of telling a line mark by any distinction except by the hit, but the mark shows to have been made about 1928, the date of his survey."

The case was submitted to a jury upon special issues, which were answered in favor of the defendants and judgment was entered accordingly. Plaintiff has appealed. We shall continue to refer to the parties as aligned in the trial court, plaintiff and defendants.

Plaintiff's assignments of errors challenge the action of the trial court in overruling its motion for instructed verdict and its motion for judgment non obstante veredicto, and attack the findings of the jury in the answer to each of the special issues as being without support in the evidence. Among the several findings attacked· are the answers of the jury to the following special issues, submitted at the request of plaintiff:

"Special Issue No. D: Do you find from a preponderance of the evidence that the west line of the A. Little Park Survey, as surveyed upon the ground by John I. Choice in 1929 was surveyed in due south course from a point· three varas east of a White Oak tree standing at or near the northeast corner of the Grisham Survey? Answer 'He did' or 'He did not', as you find the facts to be." Answer: "He did."

"Special Issue No. 2: Do you find from a preponderance of the evidence that the course surveyed by John I. Choice in 1928, for the west line of the A. Little Párk Survey, after reaching high land, ran to the west of the fence erected by M. T. Cole in 1923, for the purpose of separating his land in the A. Little Park survey from the land owned by W. B. Walker out of the E. H. Grisham Survey? Answer Yes or No, as you find the facts to be." Answer: "No."

Plaintiff makes contention to the effect that the above quoted findings of the jury are contrary to the testimony as given by Cole and his two sons as well as the testimony of plaintiff's surveyor witnesses, Rest and White. We do not agree with the contention. The findings are supported by and are in accord with the testimony of M. T. Cole and his two sons. It is true their testimony as to where Choice actually surveyed the West line of the Cole upon the ground is contrary to the conclusions reached by the surveyors Rest and White, which raised a controverted issue of fact that was determined by the jury and which we would not be authorized to disturb. With respect to the issue involved in the above two questions, as to where upon the ground Choice actually surveyed the West line of the Cole survey in 1928 or 1929, plaintiff in substance makes the further contention that the testimony of its witness White

should be given controlling effect, wherein he testified to having found marks on trees indicating a line running from C to D in a Southwest course, along the West side of the Cole survey, to the North line of the Brooks, which marks from their appearance and the date of the field notes witness identified as markings of Choice; and, it is contended, that such testimony conclusively and as a matter of law established as a fact that Choice actually surveyed a Southwest course along the West of Cole's fence, and not a South course as described in his field notes. In support of his contention plaintiff cites the cases of Bearden v. Schenecker, Tex.Civ.App., 240 S.W. 996, and Gill v. Peterson, 126 Tex. 216, 86 S.W.2d 629, 631. We are unable to agree that these cases support plaintiff's contention. They state certain rules of boundary law and certain qualifications of such rules so clearly that we respectfully here incorporate them by reference to the two opinions rather than by an attempt to restate them, but quote such as may be pertinent to the specific testimony here under consideration. Each of said opinions recognizes the general rule as expressed by Judge Smedley in the Gill case: "* * * that the location of lines or corners of a survey may not be established or controlled by artificial objects or marks not called for in the field notes."

Or as expressed by Judge Dunklin in the Bearden case [240 S.W. 999]: "* * * that objects found upon the ground indicating boundaries which are not called for in the field notes of the deed cannot be looked to for the purpose of locating the footsteps of the surveyor."

And a qualification of that rule as expressed by Judge Smedley: "* * * that parol evidence is admissible to show where, on the ground, a survey was actually made, when the calls in the field notes or deed are conflicting or ambiguous, or when the effort to apply the description to the ground gives rise to ambiguity."

And in such circumstances: "* * * that an object or mark not called for in the field notes is admissible to prove the location of a * * * corner of a survey when such object or mark is 'identified by the surveyor who made the survey, or by any other witness who was present with him at the time, as having been so placed to mark his footsteps' [citing authorities]. The obvious reason for this qualification of the rule is that testimony of the surveyor who made the marks or of some other person who was present when they were made is direct and primary evidence as to the place where the line of the survey was actually run."

White's testimony does not come within the qualification of the rule, and neither of the cases referred to would authorize giving it the conclusive weight contended for by plaintiff. White was not present when Choice made the survey. He did not see Choice make the marks found by him. He does not testify as a positive fact that Choice made the marks found by him, or if made by Choice that such marks were made at the time and for the purpose of marking the particular survey line in question. His testimony is:

"Q. Did you recognize any marks on that line as having been made by Mr. Choice? A. Yes, sir, by the date of his field notes. Of course, I have no means of telling a line mark by any distinction except by the hit, but the mark shows to have been made about 1928, the date of his survey."

This testimony does not directly connect the marks found by the witness with the particular survey in question made by Choice.

"The mark or object is of no probative value if the field notes or grant contain no description of it or no reference to it and there is no evidence directly connecting it with the work of the original surveyor." Gill v. Peterson, supra.

On the other hand, the testimony of M. T. Cole and his two sons, members of the surveying party, dispute the contention that Choice at the time the survey in question was made actually ran West of the fence and marked the trees found by White. Their testimony indicates that Choice actually ran the South course as described in his field notes.

We have examined plaintiff's remaining assignments of error and propositions, and they are respectfully overruled.

The judgment is affirmed.