**TOWN OF REFUGIO et al. v. STRAUCH et al.**
**(No. 8256.)\***

Court of Civil Appeals of Texas. San Antonio.
July 11, 1929.

Rehearing Denied Oct. 9, 1929.

Jas. E. Ferguson, of Austin, and Gaines, Gaines & Roberts, of San Antonio, for appellants.

Boyle, Wheeler & Gresham, of San Antonio, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellees.

SMITH, J. Under a grant of four leagues of land from the Government of Coahuila and Texas, the town of Refugio was established upon said land in the year 1834. Subsequently the land was subdivided by the town into lots, blocks, and streets. Some of the lots, designated as "farm lots," were in tracts of 40 acres each, and were separated by streets 30 varas in width. These lots were sold by the town government to various purchasers. Farm lots 12 and 7 adjoin each other and abut upon a designated but unnamed street forming their south boundary line, and lots 13 and 6, respectively, lie opposite them on the south side of said street. In short, all said lots abut upon said street, which separates lots 12 and 7, on the north, from lots 13 and 6 on the south. The town sold these lots, one of them in 1876 and the other three in 1879, to individuals whose titles thus acquired are now owned by appellee George Strauch and his associates in this litigation. In the conveyances to these purchasers the property conveyed was described by metes and bounds, which carried the property lines to and thence along the street boundary lines. There was no express reservation to the town of the fee in the street.

In November, 1928, the town of Refugio, through its mayor and in accordance with ordinances regularly enacted for that purpose, leased certain streets of the town, including that on which the lots in question abut, to T. P. Morgan, for oil and gas purposes. Subsequently Morgan assigned the lease to the Refugio Development Company, a corporation. Under this lease the lessees, with the aid of the town authorities, entered upon said street and drilled an oil and gas well therein to what is assumed to be the point of production, but before they could bring in the well, Strauch and his associates procured a temporary injunction, restraining them from further prosecuting the operation. The town officials were made parties defendant, and come under the ban of the injunction. The defendants have appealed.

It appears from the record that appellees and their predecessors in title had effectively kept the four lots, and therefore the street in question, under fence since the year 1886—42 years—so that their possession of the entire premises, including the street, was exclusive as to all persons until the lessees' forcible entry upon the street in 1928 for the purpose of drilling the well in question. The question of appellees' title to the street by limitation, however, is not involved in the appeal.

Appellees base their right to the injunction upon several grounds: First, that as abutting owners upon both sides of the street they have fee-simple title in the whole of the street, subject only to the easement thereover in the public, for street purposes, and that therefore appellants are trespassing upon their estate

therein; second, that the town government had no power to execute a valid oil and gas lease upon the street, and that appellees as members of the public have a right to enjoin such wrongful use of the street; third, that the drilling operations constituted a nuisance to appellees as owners of the property abutting upon the exploited street, in that such operations obstruct appellees' use of the street as such; fourth, that the drilling operations, if productive, would result in draining appellees' adjoining land of its oil and gas deposits.

It is provided in article 1267, R. S. 1925, in force at the time the town of Refugio undertook to lease the street in question to appellants for oil and gas purposes, as follows: "Cities and towns chartered or organized under the general laws of Texas, or by special Act or charter, which may own oil or mineral lands, shall have the power and right to lease such oil or mineral lands for the benefit of such town or city, but shall not lease for such purposes any street or alley or public square in said town or city, or any land therein dedicated by any person to public uses in such town or city; and no well shall be drilled within the thickly settled portion of any city or town, nor within two hundred feet of any private residence."

So, if the street in question was subject to the lease by the town to appellants, it was so because it constituted "oil or mineral lands," as distinguished from a "street," as contemplated in article 1267. As has been shown, the strip dedicated and designated by the town as a street has never been in any way or to any extent improved or used for street purposes; it has all the while lain in the brush in appellees' pasture, wholly free of any outward mark or sign to distinguish it from the unimproved land surrounding it on every side. It is situated about half a mile from any residence, two miles from the town, and one and one-half miles from the "town proper," which contains about 1,800 inhabitants. It is undisputed, however, that the street was set aside, designated, and dedicated as a street by the lawfully constituted town authorities before any of the adjoining lands were conveyed by the town to appellees or their predecessors in title, has not only never been abandoned as such, but from time to time the town has unmistakably asserted its claim upon the strip as a street, so that its status as such has remained unimpaired through all the years. Its status is conceded by appellees, and must be conceded by appellants, whose very lease thereon expressly described the strip as a "street" of the town. The fact that the strip has never been improved or used as a street has no material bearing upon its status as such, for the right of the town to improve it at any time for the use of the public as a street remains active, and is not impaired by nonuser. City of Corsicana v. Zorn, 97 Tex. 323, 78 S. W. 924, 925; City of Laredo v. De Moreno (Tex. Civ. App.) 183 S. W. 827.

This being true, we perceive no reason why this street may be excepted from the operation of the provision in article 1267 prohibiting a town or city from leasing its streets for oil and gas purposes. It is a street, even though it has not yet been subjected to active uses as such, and the town has no power to burden it with a valid and binding oil and gas lease, in the face of the statutory prohibition, and thus bargain away the power and duty of the town to put it to the uses for which it was set apart and dedicated. It was the obvious purpose of the Legislature to prohibit municipal governments from diverting their dedicated streets, and other public ways and places, to this character of private use, and no provision is expressed in or may be implied from the legislative prohibition excepting from its operation such ways or places as have not yet been put into active use by the public. The clear intent, as well as the plain provision of article 1267, is to permit municipalities to lease their "oil or mineral lands," for development as such, and to prohibit them from leasing their "streets" for that purpose, and it would be a palpable perversion of the statute to permit such exploitation of a street, merely because it may not now be in active use by the public as such.

Having concluded that appellants are without any legal right to enforce their lease contract to drill the street in question for oil and gas, or to continue the operation already commenced thereon, we are relegated to the question of the right of appellees to enjoin those operations.

Appellees claim title to the fee in the street in question, subject to the right of passage thereover by the public, by reason of the operation of the common-law rule that a conveyance of land abutting upon a public highway carries with it the fee to the center of such way, as a part of the grant, unless a contrary intention is clearly expressed in the deed of conveyance; that under this doctrine, as owners of the land on both sides of this street, they own the fee-simple title to the whole of the strip occupied by the street, subject only to the use of the strip by the public for the purposes to which it was dedicated when the town designated it as a street. Undoubtedly this is the general rule under the common law, and it is equally true that this rule has been given the force of law in this state, as declared in the early case of Mitchell v. Bass, 26 Tex. 372, and consistently adopted in an unbroken line of decisions since that declaration.

As the owners of the fee in the street, subject only to the public easement thereover, appellees have the right to put the premises to any lawful use they see fit, so long as such use does not interfere with the dedicated public use, and within that limitation may ex-

tract and convert to their own uses the mineral or other deposits under the surface of the street. They cannot sink wells or shafts into the street, for in so doing they would obstruct the way and destroy or impair the actual or potential public use to which it has been dedicated. But their ownership of those deposits is none the less potential by reason of this prohibition, and may be effectuated by drainage into wells or shafts sunk into their abutting premises. And when appellants, operating under a void lease from the town, and from their position as trespassers upon the public easement, take or threaten to take those deposits and convert them to their private use, they may be enjoined at the suit of appellees, whose estate is thus unlawfully invaded.

It is obvious, moreover, that article 1267 was not enacted by the Legislature for the benefit of the municipality, but for the benefit of the inhabitants and property owners of the municipality, as a protection to the public against the use of streets by the local governing bodies or by any other persons upon the invitation of or under license from the municipality for the particular private purpose condemned by the Legislature, which has inherent dominion over all streets and highways. That act operates as a restriction upon the delegated general power and dominion of the municipality over its streets. The members of the public are entitled to the protection vouchsafed them by that statute, and when the town government, the natural guardian of the rights of the public, not only refuses to enforce those rights and accord that protection, but aids the wrongdoer in perpetrating the prohibited evil, the public are relegated to courts of equity for protection. The unlawful prostitution of the street in question to prohibited private uses operates to the injury of every inhabitant and taxpayer in the town, and since the town government refuses to exercise its power and duty to protect the public against the evil, and lends that power to the wrongdoer, we see no reason why any member of the public may not appeal directly to the courts for relief.

These conclusions settle the appeal, and the judgment is affirmed.